### REAP v. HINES, Agent, etc. (LEHIGH VALLEY R. CO.).

(Circuit Court of Appeals, Second Circuit. April 27, 1921.)

#### No. 194.

1. **Commerce ⊕—27(7)—Switchman, removing intrastate car to assist in making up interstate train, is engaged in "interstate commerce."**

   A switchman, who was injured by falling from a car containing an intrastate shipment, while it was being moved from one track to another to enable the switching crew to get other cars to make up an interstate train, was engaged in interstate business, or in an act so directly and immediately connected with such business as substantially to form a part or necessary incident thereof, and therefore could maintain suit for his injuries under the federal Employers' Liability Act (Comp. St. §§ 8657–8665).

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. **Commerce ⊕—27(6)—Federal act requires hand brake on car, though used in intrastate commerce.**

   Under the Safety Appliance Act of March 2, 1893, as amended April 1, 1896 (Comp. St. § 8610) which by Act March 2, 1903 (Comp. St. § 8613), was made applicable to all cars used on any railroad engaged in interstate commerce, and under Act April 14, 1910 (Comp. St. §§ 8617, 8618), requiring all cars subject to the Safety Appliance Act (Comp. St. § 8605 et seq.) to be equipped with efficient hand brakes, a railroad company which is engaged in interstate commerce must equip with an efficient hand brake a car which was then being used for intrastate commerce.

3. **Master and servant ⊕—286(13)—Negligence in failing to provide hand brake held for jury.**

   In an action for injuries to a railroad switchman, who fell from a car while attempting to apply the hand brake, evidence that an attempt had been made to take up the slack in the brake chain by a stick of wood *held* sufficient to take to the jury the question whether the car was equipped with an efficient hand brake, as required by the Safety Appliance Act (Comp. St. § 8605 et seq.).

In Error to the District Court of the United States for the Southern District of New York.

---

⊕—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by James J. Reap against Walker D. Hines, as Agent of the United States Railroad Administration (Lehigh Valley Railroad Company), under the federal Employers' Liability Act, to recover damages for personal injuries. There was a judgment of nonsuit, and plaintiff brings error. Reversed.

John C. Robinson, of New York City, for plaintiff in error.

Allan McCulloh, of New York City (Clifton P. Williamson, of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On May. 15, 1919, the plaintiff in error was employed by the defendant in error as a brakeman at or near Coxton, state of Pennsylvania. He suffered a severe injury by being thrown from a car which was being taken out of the classification yard of the railroad company. He had been engaged for four or five months prior to the date of his accident in this yard. His duty was, with other members of the crew, to ride upon cars in making up trains in this yard. This work was called classification, and consisted of pushing strings of cars along tracks in the classification yard as were required for the making up of trains to leave for destination in other states. At the time in question, a string or "push" of coal cars was moved down from Austin Junction, and the cars were distributed to the various tracks. In this string of cars there was one which it was desired to remove from the track, and which was not bound west out of the yard. It was taken out to be placed on another track, called a "B. O. track back of the shanty," so as to make up other "pushers." Plaintiff in error testified that he mounted the car in question after the engine had reversed and pushed the car back over the hump (a track on which the cars were allowed to run down by gravity and were switched into the various tracks), and as it was proceeding by its own momentum down the grade he turned on the brakes in order to see if they took hold properly and found they did not. As he was putting some strength into the attempt to turn the wheel, it suddenly was released; he lost his balance and fell off the car and was injured. After the accident, it was discovered that a stick of wood was inserted in the chain which connected the brake and shaft with the brake lever. The plaintiff in error said:

"I twisted it up a little on the chain, and it seemed as though something had catched it or something, and would not let the chain come any more, and still it was not holding, was not operating the brake, and I pulled harder and harder, and all at once it left go and went around in the direction that I was twisting it, and just let go right in a sudden and throwed me off the car." "I intended to check the car up, and still the brake did not hold."

The block of wood which was found was about nine inches long, and was put in there for the purpose of shortening or taking up the slack in the brake chain; and although there was a mechanical device on the car, called the "brake adjuster," whose "purpose is that, if a brake is slack and don't take hold on the wheels, to take up slack of the brake, and you won't have to use so much chain," it was not used. It was not the plaintiff in error's duty to inspect the cars or brakes.

It was testified that the chain was wrapped around the piece of wood. One of the defendant in error's witnesses and employés testified that, if the chain was looped around the wood as described, the brakes would not apply.

[1] The first question presented is whether the evidence discloses that the plaintiff was engaged in interstate commerce at the time, or in work so closely related to it as to be practically a part of it, and thus be entitled to the benefits of the federal Employers' Liability Act (Comp. St. §§ 8657–8665). There were 13 tracks in this classification yard, and it was testified that the freight cars bound for Western points outside the state of Pennsylvania were brought up in large strings into the yard from the East, and there were separated and switched into the different classification tracks in accordance with the ultimate destination of each car. There was a leader track, which ran over the hump and then down a grade. It was the duty of the brakeman to apply the brakes while descending this grade. There is testimony that the coal that morning was bound for Auburn, Wendey, and Suspension Bridge, N. Y.; but the particular car on which the plaintiff in error was riding and attempting to brake, at the time he fell and was injured, was not destined for a point outside of the state. It was, however, necessary to remove this car from track No. 17, and shift it so that the balance of the cars on that track might be made up into a train which would leave Pennsylvania and go west into New York. The balance of the cars on this track consisted of about 30, and "all went west, all but that one." It is thus apparent that the purpose of removing this one car was to make way for a train of cars intended for interstate commerce.

In New York Central R. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298, a brakeman on a freight car running on a train between points in New York state had in the train some cars which were carrying interstate freight. While in New York state a movement was engaged in to uncouple the train and pull these cars from the track and back them into a siding, there to remain until picked up by another train which would carry them on in their interstate movement. While engaged in this movement, the brakeman was injured. In sustaining a right of recovery, the court said that the brakeman while so engaged, was engaged in interstate commerce.

"The scope of that statute [federal Employers' Liability Act] is so broad that it covers a vast field about which there can be no discussion. But, owing to the fact that, during the same day, railroad employés often and rapidly pass from one class of employment to another, the courts are constantly called upon to decide those close questions, where it is difficult to define the line which divides the states from interstate business. * * * But the matter is not to be decided by considering the physical position of the employé at the moment of injury. If he is hurt in the course of his employment while going to a car to perform an interstate duty, or if he is injured while preparing an engine for an interstate trip, he is entitled to the benefits of the federal act, although the accident occurred prior to the actual coupling of the engine to the interstate cars. * * * Each case must be decided in the light of the particular facts, with a view of determining whether, at the time of the injury, the employé is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof."

To assist in raising a wrecked car to rescue fellow employés, and incidentally to clear the track for interstate commerce, was held to be work of an interstate character. Southern R. Co. v. Puckett, 244 U. S. 571, 37 Sup. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69. Where two loaded cars coming from without the state were received at the railroad yard, and switching movements necessary to place the cars on private tracks were indulged in, it was held to be work incident to interstate commerce. Pennsylvania Co. v. Donat, 239 U. S. 50, 36 Sup. Ct. 4, 60 L. Ed. 139.

Examining the character of the act which was being performed by the plaintiff in error at the time of his injury, we think he was engaged in the work of preparing a train which was to move out of the state of Pennsylvania into New York state. A necessary part of this work was to drill the cars in making up the train. The removal of a purely intrastate car, or one which was simply to be shifted in the yard, and thus to facilitate the interstate movement of the train, justifies the claim of the plaintiff in error that he, at the time, was engaged in an act which was directly and immediately connected with interstate business, and which subsequently formed a part or was a necessary incident thereof.

[2] The Act of March 2, 1893, as amended April 1, 1896 (Safety Appliance Act), being Comp. St. § 8610, provides for equipment of automatic power brakes, automatic couplers, grabirons, and the height of drawbars. It is provided by the Act of March 2, 1903 (32 Stat. at Large, 943, c. 976 [Comp. St. § 8613]):

"The provisions and requirements hereof and of said acts relating to train brakes, automatic couplers, grabirons, and the height of drawbars shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, and in the territories and the District of Columbia and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith."

By the Act of April 14, 1910 (Comp. St. §§ 8617, 8618), it was provided:

"That the provisions of this act shall apply to every common carrier and every vehicle subject to the act of March second, eighteen hundred and ninety-three, as amended April first, eighteen hundred and ninety-six, and March second, nineteen hundred and three, commonly known as the 'Safety Appliance Act.'

"Sec. 2. That on and after July 1st, nineteen hundred and eleven, it shall be unlawful for any common carrier subject to the provisions of this act to haul, or permit to be hauled or used on its line any car subject to the provisions of this act not equipped with appliances provided for in this act, to wit: All cars must be equipped with secure sill steps and efficient hand brakes."

The amendment of 1903 applies to all trains, locomotives, tenders, cars, and steam vehicles used on any railroad engaged in interstate commerce, and by the amendment of 1910 it is provided that efficient hand brakes shall be supplied to every common carrier and every vehicle subject to the act of March 3, 1893, as amended April 1, 1896, and March 2, 1903. The defendant in error was an interstate railroad company; therefore it was required, under the Safety Appliance Act, to provide efficient brakes whether used in interstate or intrastate com-

merce. Texas & P. R. Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874; Southern Ry. Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72; Ronald v. Lehigh V. R. (C. C. A.) 265 Fed. 138; Ross v. Schooley, 257 Fed. 290, 168 C. C. A. 374; Ward v. Erie, 230 N. Y. 231, 129 N. E. 886. For a breach of this obligation, absolute liability of the railroad company, in case of injury because of a failure to comply with the act, is imposed. St. Louis, etc., Ry. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Atlantic City R. Co. v. Parker, 242 U. S. 56, 37 Sup. Ct. 69, 61 L. Ed. 150. In the latter case, the court said:

"If there was evidence that the railroad failed to furnish such 'couplers coupling automatically by impact' as the 'statute requires (Johnson v. Southern Pacific Co., 196 U. S. 1, 18, 19), nothing else needs to be considered. We are of opinion that there was enough evidence to go to the jury upon that point. No doubt there are arguments that the jury should have decided the other way. Some lateral play must be allowed to drawheads, and, further, the car was on a curve, which, of course, would tend to throw the coupler out of line. But the jury were warranted in finding that the curve was so slight as not to affect the case, and in regarding the track as for this purpose a straight line. If couplers failed to couple automatically upon a straight track, it at least may be said that a jury would be warranted in finding that a lateral play so great as to prevent coupling was not needed, and that, in the absence of any explanation believed by them, the failure indicated that the railroad had not fully complied with the law."

In Minneapolis & St. Louis R. R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995, it was said:

"The jury, under an instruction of the court, was permitted to infer negligence on the part of the company from the fact that the coupler failed to perform its function, there being no other proof of negligence. It is insisted this was error, since, as there was no other evidence of negligence on the part of the company, the instruction of the court was erroneous as, from whatever point of view looked at, it was but an application of the principle designated as res ipsa loquitur, a doctrine the unsoundness of which, it is said, plainly results from the decisions in Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, and Looney v. Metropolitan R. R. Co., 200 U. S. 480. We think the contention is without merit, because, conceding in the fullest measure the correctness of the ruling announced in the cases relied upon to the effect that negligence may not be inferred from the mere happening of an accident, except under the most exceptional circumstances, we are of opinion such principle is here not controlling, in view of the positive duty imposed by the statute upon the railroad to furnish safe appliances for the coupling of cars."

[3] We think the evidence here of the condition of the brake with a piece of chain wrapped around a piece of wood to take up the slack was sufficient evidence to require the submission of the question of fact to the jury as to whether the defendant in error has complied with the requirements of the statute.

Judgment reversed.