## JOHN E. PAGE v. JOHN BARTON PAYNE, Director General of Railroads, Appellant.

### Division One, April 8, 1922.

1. **FEDERAL SAFETY APPLIANCE ACT: Director General of Railroads: Damages to Employee.** The effect of the Safety Appliance Act of Congress (36 Stat. 298, C. 160) is to create an absolute liability for compensatory damages to an employee injured by reason of a violation of such act, regardless of the negligence of the employee, but this fact does not render such damages a fine, penalty or forfeiture within the meaning of General Order No. 50, so as to exampt the Director General of Railroads from liability therefor. [Distinguishing Mo. Pac. Rd. Co. v. Ault, 256 U. S. 554.]

2. ———: **Switching Operations: Inefficient Hand-Brake.** The provision of the Safety Appliance Act of Congress (36 Stat. 298, C. 160, secs. 1 and 2) that all cars used in interstate commerce shall be equipped with efficient hand-brakes, and making unlawful the use of cars not so equipped, applies to switching operations in interstate commerce.

3. **SURPRISE: New Trial.** Where defendant's foreman testified on the trial that the shank of the "dog" of a hand-brake on a freight car was broken, and defendant made no objection to such testimony and no claim or affidavit of surprise at the time, but continued the trial to the end, he was not entitled to a new trial on the ground of surprise, because such foreman had previously told defendant's attorney and also his claim-agent that such "dog" was not broken.

4. **CROSS-EXAMINATION OF PLAINTIFF**: Records of Divorce Suits. In a suit for damages for personal injuries received by a switchman, an employee of defendant Director General of Railroads, by reason of an inefficient hand-brake on a car used in interstate commerce, the records of divorce suits and default judgments against plaintiff by his former wives were properly excluded when offered in evidence by defendant in connection with the cross-examination of plaintiff, as the defendant was not a party to such divorce cases.

5. ———: **Evidence of Remote Crimes: Discretion of Trial Court**. It was not reversible error for the trial court to exclude, on the cross-examination of plaintiff, letters written ten years before the trial which tended to show that plaintiff was the father of an illegitimate child, as the admission or exclusion of such testimony upon cross-examination was largely a matter in the discretion of the trial court; and it does not appear that such discretion was abused in this case.

6. ———: **Self-Incrimination: Privilege Claimed by Attorney for Client**. Where, on cross-examination of plaintiff, it was sought to elicit from him testimony which might tend to incriminate him, it was not necessary for plaintiff himself to object that such testimony might incriminate him, but such objection could be made for him by his attorney.

7. ———: **Negative Answers: Exclusion Not Error**. Where defendant's counsel, on cross-examination of one of plaintiff's medical witnesses, asked him whether a certain mode of living of plaintiff would have any effect to cause or continue the nervous condition of the plaintiff described by such witness, and he answered in the negative, it was not reversible error against defendant for the trial court, on objection of plaintiff's counsel, to exclude such evidence from the jury, as nothing favorable to defendant's cause could have been inferred therefrom or established thereby, and defendant was therefore in no way prejudiced by such ruling.

8. ———: **Documents Introduced by Defendant: Plaintiff's Right to Read**. Where defendant, on the cross-examination of plaintiff, had plaintiff identify certain documents containing statements signed by plaintiff when applying to certain railroads for employment and also containing statements as to plaintiff's physical condition signed by the examining surgeons of such railroads, and then introduced such documents in evidence without any limitation or qualification and had them marked as exhibits in the case, and read therefrom to the jury the statements signed by plaintiff, such documents became part of the record, and defendant could not withdraw any part of them without the consent of plaintiff, and plaintiff had the right to read to the jury the statements contained in such documents and signed by such surgeons.

9. **INSTRUCTIONS: Safety Appliance Act of Congress: Assumption of Risk: Contributory Negligence.** In a suit by a switchman, employed by the Director General of Railroads, against the latter, for damages for personal injuries caused by a defective hand-brake on a car being switched in interstate commerce, where the defendant had pleaded assumption of risk and contributory negligence of plaintiff as defenses, it was not error for the trial court to instruct the jury that if. they found the injury occurred by reason of a defective hand-brake, then assumption of risk and contributory negligence were no defense. Nor was it error for the court to use those terms without special definition, as this instruction, and plaintiff's other instructions also, showed that the only question in the case was whether plaintiff was injured by the defective hand-brake and, if so, defendant was 'liable, and the jury could not, therefore, have been misled or confused by the use of such terms.

10. ———: ———: **Defective Hand-Brake: Use Unlawful.** Nor was it error for the trial court in its instructions to tell the jury that it was "unlawful for any railroad company to use any car in interstate commerce that is not provided with an efficient hand brake," as it was unlawful so to do, and such instruction in no way imputed criminal conduct or criminal liability to the railroad company or the Director General.

11. ———: ———: ———: **Measure of Damages.** There was no error in the trial court's instruction for plaintiff on the measure of damages stating that "the jury will take into considerat'on the nature and extent of his injuries, if any, sustained as a direct result of the movement, if any, of the brake-wheel at the time and place referred to in the evidence," on the theory that this allowed plaintiff to recover for injuries resulting from all movements of the brake-wheel, whereas defendant was only liable for injuries. caused by the unusual movement of the brake-wheel caused by the defective or broken "dog," inasmuch as there was no evidence or suggestion in the case that usual movements of the brake-wheel, when in sound condition, caused injuries to brakeman, or that any of plaintiff's injuries could have been caused by any movement thereof when not in a defective condition.

12. ———: ———: ———: ———: **Cash Value.** Where the instruction for plaintiff on the measure of damages correctly instructed the jury as to taking into consideration the nature and extent of plaintiff's injuries, their permanence or otherwise, his past and future bodily pain and mental anguish and the amount of wages already lost and necessary medical expenses already incurred, limited in accordance with the pleadings and the evidence, and the impairment, if any, of his ability to labor and earn money in the future, and then required the jury, if their verdict was for

plaintiff, to "award him the present cash value of such sum in damages as a whole, as the jury shall find and believe from all the evidence will fairly and reasonably compensate plaintiff for his injuries, if any, so received, and your entire award, if any, will be stated in one sum," it was not erroneous as authorizing the jury to award plaintiff the cash value at the time of the trial of the wages theretofore lost by him and expenses theretofore paid out by him, inasmuch as, taken all together, it would not allow a greater recovery than would reasonably compensate plaintiff for his injuries, together with his lost wages and expenses as limited therein. Nor could defendant complain if the meaning of "present cash value" was vague, as he asked no instructions on the subject.

13. **EXCESSIVE VERDICT:** $20,000: Personal Injuries. A verdict for $20,000 for personal injuries suffered by a switchman by reason of a defective hand-brake on a car used in interstate commerce, *held* on consideration of the evidence to be substantially more than the precedents will justify, and to be excessive in the sum of $7,500.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird,* Judge.

AFFIRMED (*on condition*).

*Luther Burns, Guthrie, Conrad & Durham* and *Hale Houts* for appellant.

(1) The safety appliance act is not applicable. That act creates a liability irrespective of negligence and irrespective of the fact that the employer has exercised ordinary care. Its effect is to create and impose a penalty. To allow recovery under it would be to inflict a penalty upon the Director General of Railroads and the Federal Government, and this cannot be done. Iron Mountain Railroad Co. v. Taylor, 210 U. S. 281; Mo. Pac. Ry. Co. v. Ault, 41 Sup. Ct. Rep. 593. The movement in progress when plaintiff was injured was a switching movement, and the provision of the safety appliance act requiring an efficient hand-brake does not apply to a switching movement. Farrell v. Railroad, 93 Atl. 682.

(2)   The court erred in not granting a new trial on the ground that defendant was surprised by the testimony of witness Bruce. Sly v. Railroad, 134 Mo. 681; Gatz v. Railways, 227 S. W. 1045. (3) The court erred in refusing to allow defendant to interrogate plaintiff upon cross-examination as to various acts and conduct of plaintiff tending to discredit him as a witness, and in denying defendant's offers to prove such acts and conduct by the plaintiff upon cross-examination. Muller v. Hospital Assn., 5 Mo. App. 401, 73 Mo. 242; State v. Long, 201 Mo. 674; Miller v. Journal Co., 246 Mo. 722; State v. Davis, 225 S. W. 709; Carp v. Ins. Co., 104 Mo. App. 520; O'Connor v. Transit Co., 106 Mo. App. 220; Briscoe v. Ry. Co., 118 Mo. App. 670; Ridenour v. Mines Co., 164 Mo. App. 596. (4) The court erred in excluding evidence and restricting cross-examination bearing upon the extent of plaintiff's injury. Ford v. Kansas City, 181 Mo. 144. (5) The court erred in permitting counsel for plaintiff to read in evidence to the jury statements of various railroad doctors to the effect that they had examined plaintiff upon application for employment to those railroads and found him physically able to accept that employment. Howell v. Sherwood, 242 Mo. 540. (6) Plaintiff's Instruction 2 was erroneous and highly prejudicial. It discussed defendant's answer and the defenses therein pleaded and told the jury they were not available to defendant. Blackmore v. Ry. Co., 162 Mo. 463; Dassler v. Wisely, 32 Mo. 500; Wesner v. Railroad, 177 Mo. App. 123; Alms v. Conway, 78 Mo. App. 492. It used technical and legal terms, "assumed risk" and "contributory negligence," without defining the same. Turnbow v. Dunham, 272 Mo. 65; Montgomery v. Railroad, 181 Mo. 513; State v. Hardelein, 169 Mo. 579; Gardner v. Ry. Co., 167 Mo. App. 612; Ry. Co. v. Dawley, 50 Mo. App. 487; Mullix v. Bryant, 98 S. W. 90; Strother v. Railway, 183 S. W. 658; Scheidel Co. v. Bacon, 201 S. W. 919. It told the jury that the Director General of Railroads was a law breaker. Mo. Pac. Ry. Co. v. Ault, 41 Sup. Ct. Rep. 597. (7) The measure-of-damages in-

struction was erroneous. It permitted recovery for all injuries resulting from "the movements of the brake-wheel." Had the "dog" been in perfect order and the brake been efficient, the wheel would have turned, moved, when the brake was released. Plaintiff was entitled to recover, if at all, only for injuries resulting from such movement of the brake-wheel as was unusual, and found by the jury to have been caused by a broken "dog." Menhardt v. Storage Co., 163 Mo. App. 283; Davis v. Rys., 188 Mo. App. 143. The instruction authorized the jury to award plaintiff the cash value at the time of the trial of the wages previously lost by plaintiff and the medical expenses previously incurred by him. Rigley v. Pryor, 233 S. W. 832. (8) The court erred in not granting a new trial on account of excessiveness of the verdict. The award of $20,000 was wholly unwarranted by the evidence. Gibney v. Transit Co., 204 Mo. 704; Davidson v. Transit Co., 211 Mo. 320; Chalanda v. Transit Co., 213 Mo. 244; Rigg v. Railroad, 212 S. W. 880; Hulse v. Ry. Co., 214 S. W. 155; Corn v. Ry. Co., 228 S. W. 79; Rogles v. Rys. Co., 232 S. W. 93; Chambers v. Hines, 233 S. W. 952. The verdict was so excessive as to indicate passion and prejudice on the part of the jury and to require reversal of the judgment. Gibney v. Transit Co., 204 Mo. 704; Davidson v. Transit Co., 211 Mo. 320.

*Atwood, Wickersham, Hill & Popham* for respondent.

(1) It is conceded that as to the law of this case it is governed by the Federal Employer's Liability Act and the Federal Safety Appliance Act. Therefore, the defense of assumed risk and contributory negligence pleaded by defendant was not available. Thayer v. Railroad, 185 Pac. 542; Railroad Co. v. Layton, 243 U. S. 617; Callicotte v. C. R. I. & P., 204 S. W. 529; Moore v. Railroad, 268 Mo. 31. Contrary to defendant's contention, defendant was required to equip its car with an efficient hand-brake. The Director General was governed

by the Federal Safety Appliance Act. Reap v. Hines, 273 Fed. 88; 2 Roberts, Fed. Liability of Carriers, p. 1372, sec. 839; Director Gen. v. Ronold, 265 Fed. 138; Ry. Co. v. Rigsby, 241 U. S. 33; Dutton v. Hines, 267 Fed. 452. (2) The court did not err in refusing to grant a new trial on the ground of alleged "surprise." Defendant's counsel made no objection even, much less filing an affidavit of surprise, when witness Bruce was on the stand. Sang v. St. Louis, 262 Mo. 467; Formento v. Hines, 225 S. W. 105; Oncken v. Ehrler, 222 S. W. 1047; State v. Speritus, 191 Mo. 41; Grocery Co. v. Hotel Co., 183 Mo. App. 440; Knox v. Railroad, 199 Mo. App. 72. (3) (a) The court committed no error in refusing to permit the defendant to interrogate plaintiff regarding the irrelevant, immaterial matters regarding plaintiff's private life. Defendant's counsel offered no purpose for attempting to introduce such testimony and the questions called for incriminating answers which plaintiff had a right to refuse to give. Moreover it was within the court's discretion to refuse to admit such testimony. Wendling v. Bowden, 252 Mo. 695; State v. Potts, 239 Mo. 413; State v. Davis, 225 S. W. 709; Miller v. Journal Co., 246 Mo. 729. (b) Where a party to a suit is the witness interrogated, counsel may claim the privilege of incrimination for the witness. Clifton v. Granger, 86 Ia. 573; State v. Shockley, 29 Utah, 25. (c) Defendant's counsel stated he wanted to show that plaintiff lived in adultery with women. Adultery is a crime, hence plaintiff rightfully interposed his constitutional privilege against self-incrimination. R. S. 1919, secs. 3515, 3664, 3712; 40 Cyc. 2535; 28 R. C. L., p. 608, sec. 198. (4) Appellant's contention that Instruction 2 offered by plaintiff is erroneous is without merit, because: (a) It is conceded the liability, if any in the case, was governed by the Federal Employer's Liability Act and Safety Appliance Act. This being true, there was nothing left for the jury to determine but the nature and extent of the injuries and the damages to be awarded. Moore v. Railroad, 268 Mo. 31; Tex. & Pac. Railroad v. Rigsby, 241

U. S. 33.  (b)  Defendant's answer set up assumed risk and contributory negligence.  Under the proof these defenses were clearly unavailing.  Plaintiff's instruction merely directed the jury's attention to defenses interposed by defendant and used the language used by defendant in the answer.  Moreover, if defendant was apprehensive that the jury might be misled by the terms "contributory negligence" and "assumed risk" it should have offered an instruction correctly defining these terms. Distler v. Railroad, 163 Mo. App. 678; Tucker v. Carter, 211 S. W. 138; Malone v. Ry. Co., 213 S. W. 864.  (5) Plaintiff's  measure-of-damage  instruction  is  correct. "The movement of the brake wheel" mentioned in the instruction specifically tells the jury that such movement is meant as is explained in the preceding instructions, and clearly followed the proof and told the jury what they should find.  (6)  The verdict of the jury was not excessive.  The overwhelming proof showed plaintiff suffered such injuries as to cripple him for life and make it impossible for him to work and earn a livelihood.  Taking into consideration plaintiff's age, his railroad experience and previous good health, the award of $20,000 for the painful, disabling injuries was only a reasonable award.  Smith v. Kansas City Southern, 213 S. W. 481; Meeker v. L. & P. Co., 216 S. W. 923; Turnbow v. Rys. Co., 211 S. W. 41.

SMALL, C.—Personal injury case.  The plaintiff was a switchman employed by the Director General of Railroads in control of and operating the Rock Island Railroad.  He was injured September 4, 1919, while engaged in switching an interstate livestock train at the stock yards in Kansas City, Kansas.  At the time he was on the top of a car, attempting to release the hand-brake thereon, said brake having been previously set.  The "shank" of the "dog" in the ratchet wheel attached to the brake, the plaintiff testified, was broken off, so that he could not use it to release the brake, but he was required to pry or push the "dog" out of the ratchet with

his foot and to assume a cramped position in order to do so, with the result that when thus released, the brake whirled around so suddenly and violently that plaintiff was thrown against the brake and the car and severely injured.

The petition predicated defendant's liability upon the broken or defective "dog" as constituting a defective or inefficient hand-brake used in violation of the act of Congress requiring all cars used in interstate commerce to be equipped "with efficient hand-brakes."

The answer was: First, a general denial; second, plaintiff's injury due to his own negligence; third, that plaintiff assumed the risk; fourth, defect complained of was not the proximate cause of the injury. Reply was a general denial.

Not only the plaintiff himself testified that the shank of the dog was broken off, but Bruce, the foreman of the switch crew, when put upon the stand by the defendant, so testified. At the time, the defendant's counsel made no affidavit of surprise and in no way objected to the foreman's testimony on that or other grounds. But one of the grounds of defendant's motion for new trial was that said foreman had previously stated to defendant's claim-agent and one of its attorneys that said shank was not broken and that defendant was surprised at his testimony to the contrary. Affidavits were filed by defendant to sustain the truth of this ground for new trial.

On cross-examination of the plaintiff, defendant's counsel asked him numerous questions for the purpose of affecting his credibility as a witness, which the court excluded. Thereupon, defendant's counsel offered to show by the witness that on or about the 23rd of January, 1904, plaintiff was married to Edith L. Page, formerly Edith Wallace; that shortly prior to January 13, 1910, said Edith L. Page caught the plaintiff in a room with another woman, and that shortly thereafter she filed suit for divorce. Defendant also offered in evidence the transcript of the record and decree in said divorce suit, which showed that the petition was filed January 13,

1910, in the Circuit Court of Jackson County, Missouri. That defendant was served personally with summons and judgment was regularly and duly entered by default at the January term, 1910, granting a decree of divorce to Edith L. Page from the plaintiff, John E. Page. This record was excluded. Among other things, said petition alleged that said John E. Page had been "paying attentions to another woman," and had been guilty of adultery with a woman named Margaret. Defendant offered to show by plaintiff that this woman Margaret was placed in a hospital and shortly after gave birth to a child, and that she was under the care of a Doctor Guffey to whom plaintiff wrote letters on April 11, June 8, July 4 and July 17, in 1910, in which letters plaintiff represented said woman as his sister and promised to pay her doctor bill and asked the doctor to let him know "if any fellow comes there to see her, just to visit her at all." He also, in one of his letters said, "I would do this in a minute but I will tell the truth, I am afraid to, I don't want to be advertised, but say I will see him and see if he will deduct that amount and send it to you, $50 for hospital fees, $25 for placing the baby and your expense, total, $175. . . . and I thought you could place the baby and when I got my money I could pay you and nobody would be any the wiser." This offer was refused and the letters excluded. Defendant then offered to prove by the witness that on October 27, 1910, plaintiff married Elsie Arnold, and that in 1918 she filed suit for divorce from him. This offer was excluded. Defendant then offered in evidence a duly certified copy of said divorce suit, showing that Elsie Page obtained a divorce from John E. Page in the District Court of Labette County, Kansas, on April 12, 1918, service being had by publication and judgment being by default. The petition, among other things, alleged facts which tended to show that the defendant was the father of the illegitimate child of Margaret Kirkpatrick, and that at various times named he had improper relations with other women. The transcript of these divorce proceedings in the Kansas district

court was excluded. Defendant further offered to prove by the witness that in the Spring of 1919 he lived with a woman, not his wife, at Tenth and Harrison Street; that at 1212 Troost Avenue he lived with a woman, not his wife; and that at 1312 Holmes Street he lived with a woman, not his wife, ''I mean that he lived in adultery with these women;  .  .  .  that the woman with whom he was living was married to someone else.'' Defendant also offered to prove by plaintiff that on August 27, 1919, at 1212 Troost, plaintiff signed the register, ''Mr. and Mrs. J. E. Page,'' and that Mrs. J. E. Page was not his wife, but was a woman married to another man, and that plaintiff referred to this woman as his wife, and that he was living with her at the time of his injury. All of this testimony was excluded. Defendant also offered to show by the witness that he lived with an unmarried woman who was not his wife, both before and after the divorce was granted to Edith Page. (It appears, supra, Edith Page procured her divorce at the January term, 1910, and plaintiff married Elsie Arnold, October 27, 1910, and she divorced him April 12, 1918). This testimony was all excluded by the court on objection of plaintiff's counsel that the testimony was not relevant and was immaterial, and would violate the personal rights of the plaintiff, and was an effort to compel plaintiff to incriminate himself and to testify against himself.

On cross-examination of plaintiff, he identified defendant's Exhibits 2 to 8 as application signed and sworn to by him for employment with a number of railroad companies. Defendant's counsel then said: ''I will offer Exhibits 2 to 8 in evidence if your Honor please.'' The defendant then read portions of said applications in evidence, in which plaintiff stated that he had never before been injured in railroad or other accidents and at various dates, including November, 1917, weighed only 121 pounds, whereas plaintiff had stated on the witness stand that he had always weighed around 140 pounds, and had been injured in four or five railroad accidents before the date of such applications, and laid up each time for

a couple of months, receiving a broken nose in one ac-
cident. On re-direct examination plaintiff's counsel read
in evidence the certificates of the examining surgeons of
the railroad companies, written or printed just below
the signature of the plaintiff on said Exhibits 2 to 8, cer-
tifying in general that they had examined the plaintiff
for defects of vision, color, perception, hearing and other
physical defects and found him qualified to fill the po-
sition of brakeman. Immediately below the surgeons'
certificate was another statement signed by plaintiff ac-
knowledging receipt of the rules of the railroad company
and memoranda of the location of its bridges. To these
surgeons' certificates defendant's counsel objected that
they were incompetent, irrelevant and immaterial, and
not a statement by the witness, and as not the best evi-
dence, and not within the issues; that defendant did not
use any part of said exhibits below the plaintiff's signa-
ture thereon. That defendant wanted the plaintiff's
statement and thought that was all that was offered by
it; but the court ruled that not only the statements on said
exhibits signed by the plaintiff, but that the whole of said
exhibits, including the certificate of the examining phy-
sician, was offered in evidence by the defendant, and
therefore overruled defendant's objection to the reading
in evidence by the plaintiff of such certificates. After
they were read by plaintiff, defendant's counsel moved
to strike out all of the statements of the physicians so
read as not within the issues and being mere statements
of persons who were not witnesses under oath, and that
defendant never offered anything contained in said ex-
hibits except plaintiff's own statement over his own sig-
nature, which motion was overruled.

As to plaintiff's injuries: Plaintiff himself testified
that at the time of the accident he was jerked "awfully
bad" and thrown around and back against the car, and
struck in the middle of his back, and his head struck some-
thing, either the brakestaff or the wheel, he did not know
which; back hurst the worst; felt like every bone in his
body or back was broken. He hung where he was thrown

until the cars stopped at the switch, some thirty-five or forty car-lengths; his body seemed twisted and hung to the brakewheel. After the cars stopped he got down and hobbled with the aid of a stick up to the office, and there a couple of men helped him change his clothes, and it was arranged that he should go on a switch engine to 12th Street, and there two switchmen helped him over to the street car, and he went home and immediately went to bed. About noon the next day the railroad company's doctor, Dr. Hayden, called at his house, and put adhesive plasters across his back and over his hips and all down past his ribs and away up in the middle of his back and underneath his arms. Dr. Hayden attended him for quite a while, but plaintiff did not get any better. Dr. Hayden then arranged for him to be treated by Blomqvist, a specialist, who gave plaintiff electrical treatments seven times a day for about two or three weeks. Plaintiff then got so he could not go down there any more, could hardly walk, and quit taking such treatments; right away after he quit Blomqvist, he himself called Dr. Cope to treat him, and he has been under Dr. Cope's treatment ever since.

At the time of the trial he testified his back was awfully weak, not able to stoop and lift things, "could not pick up that spittoon and lift it straight up;" back gives right in, pains in it; got no nerves, just shot all to pieces; trembles all over (indicating with hands), always trembles that way when he holds out his hands; has had that nervous tremor ever since the injury; has to drag left leg along a good bit; is bothered in the hip; leg is numb, just goes dead, and sometimes, many times, "I lose the use of it, just walking alone, just like not having any leg;" has to rub leg to get blood into it and get it to working; stand there sometimes half an hour or more; has had a headache ever since accident, kind of dull ache, pain across here and back up in here; sometimes it goes down between eyes; has had the headache at night ever since injury, can hardly sleep at night on account of headache, sleeps only about two or three hours. Kidneys weak;

can't retain urine, has to get up nights four or five times; for a month after injury urine was of reddish cast, bloody like. At the time of the accident he weighed about 139 pounds, but his weight dropped to 117 just after the accident, which was his weight at the time of the trial. Plaintiff was thirty-five years of age; before the accident, health was good; since, never able to work; was experienced railroad man, earned $160 per month before injury. Railroaded since 1905.

Two doctors also testified for plaintiff. Dr. Cope, who treated plaintiff, begining about a month after the accident down to the time of the trial, diagnosed plaintiff's injury as neuritis, while Dr. Geraughty, who examined plaintiff at the time of the trial, diagnosed his trouble as traumatic neurosis. Both of these doctors testified that plaintiff's reflexes were somewhat exaggerated and that the pupils of his eyes were dilated. They both testified that plaintiff's injuries were permanent, and in answer to hypothetical questions that they could have resulted from accident in question. Dr. Cope was, at the time he treated plaintiff, Medical Officer of the U. S. Navy, and in his work for the Government had examined about twenty thousand men. He found plaintiff suffering from inflammation of the nerve sheath about the fourth and fifth cervical vertebrae; also from inflammation of the nerve sheath and tenderness of the sciatic nerve. That plaintiff "had a continual tremor of his limbs more pronounced, or you could observe it more, in his hands and arms. It was a shaking and quivering." That it was necessary to keep plaintiff under sedative for his nerves and to enable him to sleep. From his first visit in October, 1919, until the trial, May 13, 1920, Dr. Cope visited plaintiff two or three times a week and towards the last about once a week. Dr. Cope found severe neuritis affecting the nerves of the lumbar and sacro regions of the vertebrae of the back, where there is a great plexus of nerves coming out from the spine. He gave it as his opinion that plaintiff was permanently disabled from performing manual labor. That

plaintiff's tenderness in the back and numbness in and dragging of the left leg when he walked was a progressive condition and would not respond to treatment, and that it was his opinion that nothing surgical or otherwise could be done to alleviate the condition. Dr. Cope's testimony in the main was corroborated by Dr. Geraughty, who, in addition, testified that he found the pupillary reflex abnormal, which showed that the central nervous system was upset.

Dr. Hayden, a witness for defendant, testified that he was examining surgeon for the Rock Island, and on September 4, 1919, went to see plaintiff at 1212 Troost Avenue, and found what he considered "a sprain of his back." Witness strapped up his back and put him to bed, made thorough examination of him, considered he had merely a sprained back. Went to see him and treated him about two weeks.

Mr. Blomqvist testified for defendant; said his business was massage and gymnastic orthopedic surgery. He treated plaintiff at the request of Dr. Hayden, from sometime in September until sometime in October. Commenced by giving him three or four treatments, and increased it to six or seven treatments a day. These treatments lasted from fifteen to twenty minutes. Plaintiff complained of soreness in his back. He enjoyed the treatments so much that he used to go to sleep under them and always said he was improving. He stopped taking treatments the latter part of October. The day before he stopped, he said, "I believe that is as well as you can make me." He said he was coming back Monday again, but never came. Gave plaintiff treatments under the directions of Dr. Hayden, a railroad surgeon. He gave plaintiff thirteen treatments himself. Mr. Steutheit testified for defendant that he was an assistant of Blomqvist, and he gave plaintiff massage treatments over the small of his back, used electric treatment. Gave him treatments every day for three or four weeks. Plaintiff said he felt better. He did not give any reason for stopping. He gave plaintiff about 170 treatments. A number

of lay witness (eight or ten) for defendant, testified that they lived in the same house with the plaintiff at various times before and after the accident; that they noticed nothing about the plaintiff unusual or indicating serious physical disability. That he carried a cane at times, but they noticed no difference in his weight, apparently, before and after the accident; he was in bed off and on after the accident. One witness said plaintiff danced two sets one Saturday night on the Steamboat Majestic, after the accident; and another that he said he tried to get work at night so no one would know he was working, and another, that he sent a boy to the office of his attorney to collect some money for him, for the reason that he wanted his attorney to believe he was sick in bed; and another, that plaintiff told him prior to the injury sued for, that "the next time he got hurt it would be with the use of a safety appliance, and he would see he got enough to settle for." One of defendant's witnesses testified that plaintiff was around the house practically all the time, but at no time was he in bed all the time; that he would get up and lie down for two or three hours at a time, and then would get up again. Two physicians who had examined plaintiff at the instance of defendant testified in general that they could find no indication of anything abnormal in plaintiff's condition, except from what plaintiff himself said. That his symptoms were wholly subjective. An examination of his urine disclosed no sign of disease. Plaintiff denied the dancing episode and other acts and statements attributed to him by defendant's witnesses above.

The court refused a peremptory instruction to find for defendant, and over defendant's objection and exception, gave the following instructions for plaintiff:

"2. The court instructs the jury that defendant in this case has pleaded the defenses of assumed risk and contributory negligence, and in this connection you are further instructed that the laws under which this case is tried and submitted to you provide and you are instructed that it is unlawful for any railroad company to

use any car in interstate commerce that is not provided with an efficient handbrake, and that where any employee of such railroad on any car in such use is injured by reason of the inefficient condition (if any) of the handbrake thereon, contrary to the provisions of such laws, such employee shall not be deemed to have assumed the risk of injury from such inefficient handbrake, although such employee had full knowledge of such defect, and you are therefore instructed that it was the duty of the Director General of Railroads in this case to equip and maintain upon the car mentioned in evidence an efficient handbrake while said car was being operated (if it was) in interstate commerce; and you are further instructed that the laws under which this case is tried and submitted to you further provide that no employee of an interstate railroad who may be injured while engaged in interstate commerce shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of the safety appliance law so requiring such carrier to maintain an efficient handbrake upon any car used in interstate commerce (as above set out) caused or contributed to the injury of such employee.

"So, if the jury find and believe from the evidence that the car referred to in evidence was at said time being operated in interstate commerce and with a defective and inefficient handbrake thereon (if so), and that plaintiff was injured (if so) as a direct result of such defective and inefficient condition, if any, of such handbrake, then the defenses of assumed risk and contributory negligence are not available to defendant in this case.

"3.    The court instructs the jury that if your verdict is for plaintiff, then in estimating and determining his damages, if any, the jury will take into consideration the nature and extent of his injuries, if any, sustained as a direct result of the movements, if any, of the brakewheel at the time and place referred to in evidence (as explained in other instructions herein), whether or not such injuries, if any, are permanent, any bodily pain and mental anguish, if any, which the jury shall find and believe

from the evidence plaintiff has heretofore suffered as a direct result of such injuries, if any, any bodily pain, and mental anguish, if any, which the jury shall find and believe from the evidence plaintiff will with reasonable certainty hereafter suffer as a direct result of such injuries, if any, any wages heretofore necessarily lost by plaintiff as a direct result of such injuries, if any, not exceeding on this account one thousand, three hundred and twenty-five dollars, any reasonable and necessary medical expenses, if any, incurred by plaintiff as a direct result of such injuries, if any, not exceeding on this account two hundred and fifty dollars, any impairment, if any, of his ability to labor and earn money hereafter, as a direct result of such injuries, if any, and if your verdict is for plaintiff, you should award him the present cash value of such sum in damages as a whole, as the jury shall find and believe from all the evidence will fairly and reasonably compensate plaintiff for his injuries, if any, so received, and your entire award, if any, will be stated in one sum.''

The jury returned a verdict for plaintiff for $20,000, which the court refused to set aside on defendant's motion for new trial. Defendant then appealed to this court.

I.   The effect of the Safety Appliance Act of Congress is to create an absolute liability, regardless of negligence of defendant or contributory negligence of plaintiff. [St. Louis & Iron Mountain Railroad Co. v. Taylor, 210 U. S. 281.] But it does not follow that the damages awarded on account of the injuries received by reason of its violation are penalties, which cannot be recovered in suits against the Director General of Railroads. It is true that in the case of Missouri Pacific Railroad Company v. Ault, 41 Sup. Ct. Rep. 593, decided by the Supreme Court of the United States, it was held the Director General was not liable for penalties or to suits for penalties, because General Order 50, following the

Safety Appliance Act: Damages: Penalty.

Act of Congress, taking over the railroads, expressly provided that the Government would not be responsible for "fines, penalties or forfeitures." The Ault Case was to recover double wages under an Arkansas statute which authorized such recovery in case a discharged employee was not paid the wages due him within seven days after being discharged. In the course of the opinion in the Ault Case, the court, however, expressly recognized the liability of the Government for compensatory damages, saying: "Wherever the law permitted compensatory damages they may be collected against the carrier while under Federal control. Such damages may reasonably include interest and costs. [See Hines v. Taylor, 84 So. (Fla.) 381.] But double damages, penalties and forfeitures which do not merely compensate, but punish, are not within the purview of the statute. [See Hines v. Taylor, supra; Jackson-Tweed Lumber Company v. Southern Ry. Co., 113 S. C. 236, 101 S. E. 924.] The amount recovered in the present case over and above the wages due and unpaid with interest is in the nature of a punishment. It is called a penalty in the State statute."

In the case before us the damages sued for and recovered were limited to compensatory damages. It was in no sense a suit to recover a fine, penalty or forfeiture, within the meaning of the prohibition contained in said Order No. 50. We rule this point against appellant.

II. The Supreme Court of New Jersey decided in Farrell v. Penn. Ry. Co., 93 Atl. 682, that the Safety Appliance Act did not require efficient hand-brakes in switching operations. But this was a "plain error" as pointed out by the learned author of 2 Roberts on Federal Liability, sec. 839, p. 1372, where it is said: "In denying a recovery, the court (in the Farrell Case, supra) held the Safety Appliance Act did not apply to switching operations, but that was plain error as *the hand-brake* provision applies, although *the air-brake* provision does not apply. In fact, the use of hand-brakes on main lines is

Switching
Operations:
Hand-Brakes.

prohibited.   Their use, therefore, is confined strictly to switching operations and proof of an ineffective hand-brake in switching operations constitutes a violation of the statute.''    In Reap v. Hines, 273 Fed. 88, decided April 27, 1921, where a switchman was engaged in switching cars and attempted to use the hand-brake to check their momentum, but there was a stick of wood in the chain connected with the brake which caused the brake to release so suddenly that the switchman lost his balance and fell off the car and was injured, it was held the Director General was liable for the injuries plaintiff sustained, under the Safety Appliance Act (U. S. Comp. Stats. secs. ·8617-8618), which required all cars used. on any railroad engaged in interstate commerce to be ''equipped with . . . efficient hand-brakes.''    We must therefore decline to follow the Farrell Case, 93 Atl. 682, supra, and hold that the hand-brake provision of the Federal statutes applied to this case, and the lower court committed no error in so ruling.

III.   Because the defendant's foreman Bruce testified that the shank of the ''dog'' was broken and had previously told defendant's attorney and also its claim-agent that it was not broken, does not entitle defendant to a new trial on the ground of surprise.   No objection **Surprise.** to such testimony, and no claim or affidavit of surprise, was made at the time, and defendant continued the trial to the end, taking its chances for a successful verdict.   Under such circumstances it took its chances also for an unsuccessful verdict, and cannot afterwards be relieved therefrom, because of surprise at the testimony of its said witness.   [Oncken v. Ehrler, 222 S. W. l. c. 1047.]

IV.   As to the testimony offered by defendant on the cross-examination of plaintiff, ex- **Cross-Examination of Plaintiff.** cluded by the court.
                    (a)   The records of the divorce proceedings and default judgments against plaintiff by his

former wives, in Missouri and Kansas, were properly excluded, as they were not competent evidence against the plaintiff in the case on trial, because the defendant was not a party to such divorce cases. [Thomas v. Thomas, 186 S. W. 993.]

(b)   The offer to prove by plaintiff that in 1918 he committed adultery and lived with women who were the wives of other men and registered them as his wife at 1212 Troost Avenue or other places was properly refused. It is true the mere acts sought to be proved did not of themselves, perhaps, constitute open and notorius adultery, which is made a crime (Sec. 3515, R. S. 1919), but such acts were a link in the chain which might convict plaintiff of such criminal adultery and therefore he could not be made to disclose the same by his own testimony. [Smith v. Smith, 116 N. C. 386; 40 Cyc. 2540, and cases cited; State v. Ward, 2 Mo. 120, 22 Am. Dec. 449.]

*Self-Incrimination.*

(c)   It is true that as to the letters offered, they tended to show plaintiff was the father of an illegitimate child about ten years before the trial. This testimony was not inadmissible as evidence which might convict plaintiff of a crime, because his prosecution therefor, or for any crime connected therewith, was barred by the Statute of Limitations. [40 Cyc. 2541-2542, and cases cited.] The admission of such testimony upon cross-examination is a matter largely in the discretion of the trial judge, and we should not have disturbed the verdict had the court admitted such letters. [State v. Bord, 178 Mo. 1. c. 17.] But unless the court abuses its discretion in refusing or admitting such evidence, the appellate court will not hold its action reversible error. [40 Cyc. 2570, and cases cited; State v. Potts, 239 Mo. 1. c. 413; State v. Long, 201 Mo. 1. c. 675.] It is not permissible to show a conviction of crime so remote as not to reasonably bear on the present character of the witness. [40 Cyc. 2610-11, and cases cited.] Among the cases cited are instances of convictions for crime ten years

*Remote Crimes: Discretion.*

and less before the trial, which were deemed properly excluded as too remote. The same rule should apply to admitting inquiry as to the conduct of the witness which might have been criminal. In this case the letters were written in 1910, ten years before the trial, and while we might not have excluded them on the ground they were too remote, had we been upon the trial bench, we cannot find the trial judge abused his discretion in excluding them. In State v. Davis, 225 S. W. 707, this court (Division 2) held that it was proper to ask a female witness on cross-examination whether she was not the mother of an illegitimate child, but the court, while advising the admission of such evidence on the retrial, expressly stated that it was not necessary to determine whether its exclusion was reversible error. Besides, in that case it did not appear that the circumstances referred to occurred ten years before the trial, as in this case.

(d)  It was not necessary for plaintiff himself to object that such testimony might incriminate him, but such objection might be made for him by his attorney. [Clifton v. Granger, 86 Iowa, 573; State v. Shockley, 29 Utah, 25, 110 Am. St. 639.] We rule, therefore there was no reversible error in excluding the impeaching questions and evidence asked and offered by defendant in connection with its cross-examination of the plaintiff.

**Privilege: Claimed by Attorney.**

V.  (a)  On cross-examination of Dr. Cope, defendant's counsel asked the witness in effect, whether living with a woman, not his wife, after his injury, would have any effect to cause or continue the nervous condition of the "plaintiff that you have described?" Answer, "Why I should think not; not in neuritis." Thereupon plaintiff's counsel objected to the question and to having it read in the presence of the jury. The court ruled: "Objection sustained and the answer will not be read to the jury." The appellant contends the question was clearly proper. But, if so, we hold there was no reversible error committed, because

**Answer: Exclusion.**

the question was answered in the negative. If the question and answer had been read to the jury, nothing favorable to defendant's cause could have been inferred therefrom or established thereby. The ruling of the court in no way prejudiced the defendant.

(b)    It is also suggested that such evidence of misconduct in plaintiff's mode of living was admissible as affecting his health, but the only testimony on the subject was that of Dr. Cope, to which we have just Affecting referred, which is to the contrary. Therefore, Health. the case of Ford v. Kansas City, 181 Mo. l. c. 144, is not applicable. We therefore rule appellant's contentions above are not well taken.

VI.    As to the refusal of the court to exclude the certificates of the examining surgeons read in evidence by plaintiff: The defendant, on plaintiff's cross-examination, had introduced in evidence without any limitation or qualification certain written applications for employment which plaintiff had made to various rail-Whole roads and caused such applications to be marked Exhibit. Exhibits 2 to 8 inclusive. Defendant read, or called plaintiff's attention to, parts of such exhibits relating to his previous accidents and weight in order to contradict testimony plaintiff had given in chief. The said applications contained three statements: the first, signed by plaintiff, which stated the matters as to which defendant's counsel interrogated the plaintiff; the second, immediately following, was the surgeon's certificate, showing the plaintiff's good physical condition at the time the application was made; third, immediately following, another statement signed by plaintiff acknowledging receipt of the railroad company's rules, etc. These statements were not on separate pieces of paper, but on different parts of one and the same document in the order stated. The whole document was introduced in evidence by the defendant, and marked and filed as an exhibit in the case. It thus became a part of the record and defendant had no authority to withdraw any part of it with-

out the consent of the plaintiff. The plaintiff therefore had a right to read the surgeon's certificates upon such exhibits to the jury. There was no error in this.

VII.    Under the Safety Appliance Act, the defendant admits that neither assumption of risk nor contributory negligence was a defense, but contends that, although defendant had pleaded both as defenses in its answer, it was error for the court, in Instruction No. 2 given for plaintiff, to tell the jury that assumption of risk and contributory negligence were no defenses in this case, if the injury occurred by reason of a defective hand-brake. We think this point is not well taken. The instruction was a correct statement of the law and while not necessary, inasmuch as such defenses had been pleaded it was well enough to explicitly tell the jury that they were not valid defenses to the action if plaintiff's injury was caused by such defective brake.

*Instruction: Assumption of Risks.*

Nor do we think there was any error in using the terms "assumed the risk" and "contributory negligence" without special definition. There was no danger of the jury being misled or confused, as the said instruction showed, and the plaintiff's other instruction numbered one showed, that the only question in the case was whether plaintiff was injured by the defective hand-brake, and if so, the defendant was liable. Nor de we regard as error the phrase in said instruction informing the jury that it was *"unlawful for any railroad company to use any car in interstate commerce that is not provided with an efficient hand-brake."* It was unlawful so to do. This in no way imputed criminal conduct or criminal liability to the railroad company or the Director General, as suggested by appellant. We hold there is nothing of substance in appellant's objections to respondent's Instruction No. 2.

VIII.    Appellant also complains that in plaintiff's Instruction No. 3, relative to the measures of damages,

the court stated "the jury will take into consideration the nature and extent of his injuries, if any, sustained as a direct result of the movement, if any, of the brake-wheel at the time and place referred to in evidence." The objection is that this allowed the plaintiff to recover for injuries resulting from all movements of the brake-wheel, whereas the defendant was only liable for injuries caused by the unusual movement of the brake-wheel, caused by the defective or broken dog. We must deny this contention, because there was no evidence or suggestion in the case that usual movements of the brake-wheel, when in sound condition, caused injuries to brakemen, or that any of plaintiff's injuries could have been caused by any movement thereof, when not in a defective condition.

Measure of Damages: Instruction.

It is further objected that the instruction is erroneous for the reason "that it authorized the jury to award plaintiff the cash value at the time of the trial of the wages theretofore lost by him and expenses theretofore paid out by him. It was proper to authorize the jury to award plaintiff the cash value of such sum as would compensate him for his bodily injury. Plaintiff, however, was entitled on account of his loss of wages and expenses incurred to only the face thereof with interest." An examination of said instruction shows that by the first part thereof the amount of wages and expenses to be recovered was specifically limited to certain sums. There is no claim that these sums were not justified by the pleadings and the evidence. The latter part of the instruction requires the jury to allow plaintiff "the present cash value of such sum in damages as a whole as will reasonably compensate him for his injuries," and that their award should be stated in one sum. The instruction taken all together would not allow a greater recovery than would reasonably compensate plaintiff for his injuries, together with his lost wages and expenses as limited in the instruction. As stated in Rigley v. Prior, 233 S. W. 832, cited by appellant, if the meaning of "present cash value," which were also the words used in that

case, was somewhat vague, appellant cannot complain, as he asked no instructions on the subject.

IX.  As to the amount of the verdict: It was for $20,000.  While plaintiff was no doubt severely injured, yet, in view of the evidence, which we have set out with more than usual fullness, we think it is substantially more than the precedents in this court will permit to stand, and that it is excessive in the sum of $7,500.

**Excessive Verdict.** If, therefore, the plaintiff will file a *remittitur* of that amount with the clerk of this court within ten days from the filing of this opinion in said clerk's office, the judgment below will be affirmed for $12,500, with six per cent interest per annum from the time of the original rendition thereof in the circuit court. Otherwise, the judgment will be reversed and cause remanded for another trial.  Let it be so ordered.  *Ragland, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court.  All of the judges concur.