**STATE ex rel. Anna Belle FAVAZZA, d/b/a Opera Cocktail Lounge, Respondent,**

v.

**Hollis M. KETCHUM, Supervisor of Liquor Control, State of Missouri, Appellant.**

No. 49527.

Supreme Court of Missouri,

Division No. 1.

May 13, 1963.

 

Thomas F. Eagleton, Atty. Gen., Albert J. Stephan, Jr., Asst. Atty. Gen., Jefferson City, for appellant.

Burton M. Greenberg, St. Louis, London Greenberg, St. Louis, of counsel, for respondent.

DALTON, Presiding Judge.

This is an appeal by the Supervisor of Liquor Control of Missouri from a decision of the Circuit Court of the City of St. Louis, Honorable James F. Nangle, Judge, reversing an order of the Supervisor of Liquor Control suspending for thirty days the license of Anna Belle Favazza to sell intoxicating liquor by the drink. The court found ("from all the files and records in the action") that the decision of the Supervisor was not supported by competent and substantial evidence on the whole record. See Article V, Section 22, Constitution of Missouri 1945, Section 311.700 RSMo 1959, V.A.M.S.

Respondent had been issued a license by the Supervisor of Liquor Control, effective July 1, 1961 and expiring June 30, 1962, authorizing her to sell at "retail liquor by the drink" on the premises described. as "All of first floor of building know as 5646–48 Pershing Ave., St. Louis, Missouri," known as the "Opera Cocktail Lounge."

On October 5, 1961 said licensee was notified that a hearing would be held at the Supervisor's office in Jefferson City on October 25, 1961, to inquire into certain charges made against her, as in said notice set out, and she was directed to be present at said hearing and show cause why her said License No. 1330 should not be revoked or suspended. Section 311.680 RS Mo 1959. The notice charged violations of Regulation 15, subsection (k) of the Regulations of the Supervisor of Liquor Control, 1960, which subsection, as set out in the notice, was as follows:

"(k) No licensee shall employ or allow the loitering upon or about the

licensed premises of any police character, felon, gangster, racketeer, pickpocket, swindler, confidence man, female impersonator, prostitute, narcotic addict, vagrant, delinquent minor or other degenerate or dissolute person." See Section 311.660(6) and (10).

The dates on which the alleged violations occurred were stated as follows: July 29, July 31, August 3, August 9, August 16, August 21, August 22, all in the year 1961. The specific manner of violation of the regulations was not stated.

The licensee appeared in person and by her attorney, Dewey Godfrey, and a hearing was held at Jefferson City on October 25, 1961.

A certified copy of licensee's License No. 1330 and a copy of Regulation 15(k), as set out supra, and Regulation 15(a) were offered and received in evidence, Regulation 15(a) of said Rules and Regulations being as follows:

"(a) Licensees are at all times responsible for the conduct of their business and are at all times directly responsible for the conduct or act of any employee on the premises which is in violation of the Intoxicating Liquor Laws or the Non-intoxicating Beer Laws or the Regulations of the Supervisor of Liquor Control."

At the hearing it appeared that the essence of the several charges against licensee was that she had permitted an alleged felon and police character, to wit, one Vincent Marchesi, to loiter upon and about the licensed premises. By stipulation and agreement of the parties, the records of the St. Louis Police Department with reference to Vincent Marchesi were read in evidence by witness Joseph Soehngen, as follows:

"The records in the St. Louis Police Department show that he has a bertillon number and in this reading the first two figures of the number are blurred out. The last three are 875, however, the blurred out numbers in this particular reading are not blurred out in the files of the Police Department at St. Louis, and they are available. In the identification section, which is the fingerprint section, the records disclose that on the 4th of December, 1930, he was arrested as a result of an investigation of violation of the Federal Drug Laws and on 11–7–31 he was convicted of a violation of the Harrison Drug Act and sentenced to 2 years and 6 months in Leavenworth Federal Penitentiary. The identification section records further show several arrests. One on May 1, 1954, investigation. Another 2–9–56, suspect of homicide and 2–25–58 suspect of violating the liquor laws. * * *

"The record section of the police department that keeps a file on only arrests in the St. Louis Police Department has the following record. April 26, 1930, suspect violation of the Bone Dry Law, released. May 31, 1930, suspect of assault to kill. He was forwarded to headquarters for disposition and subsequently released. December 4, 1930, the same as in the identification section, a violation of the Harrison Drug Act and 2½ years in the Leavenworth Penitentiary. 3–6–31 violation of Volstead Act, forwarded to headquarters. June 25, '31, suspect of affray and released. March 1, '33, investigation, released. April 12, '33 investigation, released. July 6, '33, investigation, released. April 27, '34, investigation, released. October 29, '35, investigation, released. August 12, '43, suspect of gambling and released. December 26, keeping a common gambling house, warrants refused. August 18, 1952 keeping lottery tickets and assessed the fine of $200.00 and costs. May 2, 1954 suspect of robbery, released. February 9, 1956, suspect homicide, released. June 27, '59, suspect violation of the liquor laws and released. And an arrest was made * * * on August 22, 1961, that didn't show in the records at the time these were checked. That last arrest being suspect violation of the liquor laws."

Other evidence offered by the Supervisor on behalf of the Department of Liq-

uor Control tended to show that Gene Killoren, a police officer of the City of St. Louis who was so employed in July and August 1961 as a member of the "Gambling, Liquor and Morality Section," was familiar with licensee's place of business known as the "Opera Cocktail Lounge"; that on July 29, 1961 about 6:15 p. m. he was at said place conducting himself as a patron; that he saw Vincent Marchesi on the premises outside the bar and drinking as a customer or patron; that witness again visited the "Opera Cocktail Lounge" on July 31, 1961 and saw Marchesi there at 1:35 p. m. and noted that he was directing people to the food or buffet luncheon, asking them if they had enough, telling them where to get the plates and telling them where they could sit; that on August 3, 1961 he also visited the cocktail lounge and again on August 9, 1961 at about 3 p. m., when he saw Marchesi there; that, when witness first entered the lounge Marchesi was drinking with the rest of the patrons, sitting about the middle of the bar; and that witness saw a gentleman come into the establishment and ask the bartender if he would cash a check for him; that the bartender, who was known as "Sam," said, "You will have to ask the boss"; that "Sam" handed the check to Vincent Marchesi and Mr. Marchesi looked at it a while, a second or two, turned it over and said to "Sam," "Go ahead and cash it" and "Sam" did so. On the same date witness observed Mr. Marchesi go with a man into an annex room of the tavern, where liquor is sold by the package, and witness saw the man purchase some beer from Marchesi and he saw Marchesi open the cash register and ring up the sale on the cash register; and that the man left the premises with the beer. On August 16, 1961 witness again visited the said lounge and observed Vincent Marchesi at that time. Marchesi was then behind the bar but he later joined the customers outside the bar.

On cross-examination the witness testified that, on July 31, 1961, a buffet luncheon was laid out on two tables that had been pushed together, right north of the bowling machine; that Marchesi was not behind the bar on this occasion; and that on August 16, when he visited the lounge at 3 p. m., Marchesi was just standing behind the bar and a bartender was also present behind the bar. He did not see Marchesi handle any drinks or do anything of that nature at that time. Witness was present in the lounge on July 31, 1961 for some thirty minutes; that each of the several visits by witness to the lounge would average about twenty minutes, with a minimum of twenty minutes and a maximum of thirty minutes, and that on each occasion he saw Mr. Marchesi there. He also visited the lounge on July 30 but did not see Marchesi.

Joseph Soehngen, a member of the St. Louis Police Department and so employed in July and August 1961, testified that he had had an occasion to enter the "Opera Cocktail Lounge" on August 3, 1961 about 4:45 p. m. He remained there "Possibly 40 minutes." If the licensee was present he did not see her, but he did see and recognize Vincent Marchesi, who was on the premises when he arrived and when he left, and Marchesi was mingling with the patrons. Witness knew that Marchesi had a police record and that he had been convicted.

Licensee Anna Belle Favazza testified in her own behalf to the effect that she resided at 5912 Pershing Avenue; that her occupation was tavern owner; that her tavern was located at 5946–48 Pershing and the name of the place was "Opera Cocktail Lounge"; that she had owned it for nine years; that she knew Vincent Marchesi, and had known him for sixteen years; and that she knew that he came to her establishment.

She further testified:

"Q And for what purpose does he come to the Opera Lounge?

"A When I am there he is supposed to be there. He is a friend of mine.

"Q Then he comes to visit you? A Yes.

"Q And you have never authorized him nor told him nor allowed him to take any part in the operation of running of your business?

"A No, sir."

The witness further testified to the effect that Marchesi was not supposed to be there when she was not there, and that the only instance when he would be there without her, was when he was waiting for her to arrive. She said: "Sometimes I meet him there in the afternoon, we have lunch or I have to go down [town] for business."

On cross-examination she stated that she was aware of the fact that Mr. Marchesi had served some time on a conviction "but that was thirty years ago."

The Supervisor of Liquor Control, on the basis of the foregoing testimony, made findings of fact to the effect that on July 29, July 31, August 3, August 9 and August 16, all in the year 1961, licensee "did allow the loitering of a felon upon her licensed premises." On November 3, 1961, subsequent to the hearing on October 25, 1961, the Supervisor issued his order suspending respondent's license for thirty days, effective November 20, 1961. Thereafter, on November 16, 1961 respondent licensee filed a petition for judicial review in the Circuit Court of the City of St. Louis, whereupon on the same day, and without notice to appellant, the court stayed the order of appellant Supervisor until to and including December 14, 1961. Thereafter, on February 1, 1962, the court heard the cause on review and, on April 5, 1962, reversed the order of suspension on the ground that it was "not supported by competent substantial evidence on the whole record," and the cause was thereafter duly appealed by the Supervisor to this court.

This court has jurisdiction of the appeal, since appellant is a state officer. Article V, Section 3, Constitution of Missouri 1945; Pinzino v. Supervisor of Liquor Control, Mo.Sup., 334 S.W.2d 20, 22(1).

Appellant here assigns error on the circuit court's action in holding that the decision of appellant was not supported by competent and substantial evidence on the whole record. The cause has been duly briefed by the parties and argued on appeal.

It is not the province of this court, nor was it the province of the circuit court to determine this case on its merits. That is the function and duty of the Supervisor of Liquor Control. Our duty is to review the case for the purpose of determining whether upon the whole record the findings of fact and suspension of respondent's license is supported by competent and substantial evidence. Wood v. Wagner Elec. Corp., 355 Mo. 670, 197 S.W.2d 647, 649; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55; Lewis v. Lowe & Campbell Athletic Goods Co., Mo.Sup., 247 S.W. 2d 800.

On this appeal we must consider the evidence in a light most favorable to the Supervisor's findings. Harper v. Home Imp. Co., Mo.Sup., 235 S.W.2d 558, 559. Neither the circuit court nor the appellate court may substitute its judgment on the evidence for that of the Supervisor of Liquor Control, but said courts are authorized to and may decide whether the Supervisor reasonably could have made the findings reached and the result stated upon a consideration of all of the evidence before him. Neither the trial court nor the appellate court may set aside the Supervisor's findings unless his findings and decision are clearly contrary to the overwhelming weight of the evidence.

It is appearent from respondent's brief that counsel for respondent is not familiar with the above rules governing the review

of findings of an administrative agency, since in her brief respondent complains of appellant's brief on the theory that appellant's statement *tends to ignore and minimize all evidence favorable to respondent,* and counsel further undertakes *to state the facts and quote the evidence upon which it is contended that the circuit court below based its judgment in reversing the Supervisor's order.* In view of the conclusion we have reached, we shall discuss respondent's contentions on this appeal.

In support of the trial court's judgment reversing the order of the Supervisor the respondent insists that the transcript shows an absence of competent and substantial evidence to support the appellant's findings; that the word "loiter" must mean to linger or tarry at a place without any reason or proper motive for being there, citing People on Complaint of Bailey v. Dennis, City Ct., 208 N.Y.S.2d 522, 542; and that Marchesi's action in conducting himself as a patron, drinking on the outside of the bar, directing people to food and asking them if they had enough, telling them where to get plates and telling them where they could sit was not evidence of loitering, since reasonable activity is repugnant to loitering. Respondent further says that such activities as the evidence shows did not constitute anything unreasonable or improper; that the customer purchasing beer from Marchesi and the customer cashing the check were "unknown parties"; and that Marchesi's act in selling beer and ringing up a sale on the cash register did not constitute loitering. It is also contended that the evidence concerning Marchesi's mingling with the patrons on August 3 was not substantial evidence that respondent permitted loitering by Marchesi. Respondent further says there was no evidence as to when Marchesi arrived at respondent's tavern on any of the dates mentioned, nor was there any evidence as to the time of his departure. We agree that the Supervisor's evidence fails to show when Marchesi arrived at the tavern on the dates mentioned, or when he left, but we are not advised as to how or why such failure aids respondent's defense.

Respondent's final argument is based on the ground that "some consideration should be given" to the question of whether Marchesi's record falls within the provisions of Regulation 15, subsection (k), since he was convicted of a violation of the Harrison Drug Act in 1931 and the date of the conviction is so remote as not to reasonably bear on his present character, particularly in view of a statute of this state providing that any person who shall receive his final discharge from parole shall be restored to all rights and privileges of citizenship is valid and controlling. Respondent cites Page v. Payne, 293 Mo. 600, 240 S.W. 156, 162; State v. Dalton, Mo.Sup., 23 S.W.2d 1; Fisher v. Gunn, Mo.Sup., 270 S.W.2d 869; State ex rel. Oliver v. Hunt, Mo.Sup., 247 S.W.2d 969 and Collins v. Leahy, Mo. App., 102 S.W.2d 801. None of the cases cited are in anywise controlling as to whether or not Marchesi was a felon within the meaning of Regulation 15(k), or whether or not he was loitering upon the respondent's premises.

No question has been raised with reference to the rules and regulations promulgated by the Supervisor of Liquor Control nor as to the procedure followed in the handling of charges against licensees. See Sections 311.660 and 311.700 RSMo 1959. All the evidence heard was offered in support of or in defense of each and all of the charges made by the Supervisor of Liquor Control against respondent. No effort was made to limit the evidence in any manner with reference to any of several charges.

" 'Substantial evidence' is evidence which, if true, has probative force upon the issues, i. e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them; it is evidence from which the trier or triers of the fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts, to es-

tablish which the evidence was introduced." Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, 821 [5, 6].

■ The evidence was sufficient to support a finding that Vincent Marchesi was a "felon" within the meaning of that term as used in Regulation 15, subsection (k) of the Regulations of the Supervisor of Liquor Control. See Black's Law Dictionary, 3rd Edition, p. 763 and 36A C.J.S., Felon, p. 253. The fact that Marchesi had been convicted of a felony is not questioned. The evidence concerning Marchesi's police record was admitted by stipulation and agreement of appellant and respondent. Only the weight and value of the evidence was for the trier of the fact, in this case, the Supervisor of Liquor Control. While the felony conviction was remote as to time, the records of the police department do not support a finding that Marchesi's manner of life had materially changed so as to show him to be a law-abiding citizen, particularly the evidence of his subsequent conviction, on August 18, 1952, for keeping lottery tickets. This court has held that the lapse of time after a felony conviction does not exclude its use in the case of prosecutions under the Habitual Criminal Act. State v. Nolan, Mo.Sup., 316 S.W.2d 630, 633 [6]; State v. Humphries, 350 Mo. 983, 169 S.W. 2d 350, 351. Respondent's own testimony shows that she knew that Marchesi had been convicted of a felony.

■ The evidence was also sufficient to support a finding that respondent permitted Marchesi, a felon, to loiter about her premises, known as the "Opera Cocktail Lounge." The word "loiter" is defined by Black's Law Dictionary, 3rd Edition, p. 1130, as meaning "to stand around or move slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind." And see 54 C.J.S., Loiter, p. 793, where a substantially similar definition appears. The word "loitering" is defined as "a term having a well-recognized meaning in ordi-

nary use, the collective acts constituting which are familiar to all persons." 54 C.J. S., Loitering, p. 794. And see Jacobs v. Transcontinental & Western Air, Inc., 358 Mo. 674, 679, 216 S.W.2d 523, 526 [5], 6 A.L.R.2d 1002. Respondent's own testimony tends to show that Marchesi frequented her place of business with her full knowledge and consent. She testified: "When I am there he is supposed to be there. He is a friend of mine." She further testified that he came to visit her and, at times, he would be there waiting for her to arrive. She further said that when she was not at her place of business Marchesi was not supposed to be there; and that she had never authorized him, or told him, or allowed him to take any part in the operation of running her business. Other testimony in the record tends to show that at least Marchesi had been around the place a sufficient time to be familiar with the operation of, respondent's place of business and to actively participate therein. The testimony concerning the frequency with which Marchesi was shown to have been in respondent's place of business, visiting with customers, directing them to seats, handling the operation of the business and even appearing behind the bar was certainly sufficient evidence to sustain a finding that Marchesi was loitering about the place of business with the licensee's consent. If respondent's testimony was accepted, Marchesi had no authority to conduct business and was there only to wait for or visit with her. In any event there was plenty of evidence in the record to support a finding that licensee had permitted a felon to loiter about the "Opera Cocktail Lounge."

The judgment of the trial court is reversed and the cause is remanded with directions to set aside the order and judgment entered by the court on April 5, 1962, and to affirm the finding and order of the Supervisor of Liquor Control.

All concur.