WALTER DAVID PEARSON, Respondent, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 41424—225 S. W. (2d) 742.

Court en Banc, January 9, 1950.

1186

*Charles L. Carr, William A. Kitchen, Henry Depping, Hale Houts* and *Hogsett, Trippe, Depping, Houts & James* for appellant.

*Charles Rubins, Herbert Jacobs* and *Walter A. Raymond* for respondent.

LEEDY, J.—Action for personal injuries in which plaintiff recovered a verdict for $7,000; judgment in accordance with the verdict, and defendant appealed to the Kansas City Court of Appeals, which affirmed. (See 217 S. W. 2d 276.) On defendant's application, this court ordered transfer of the case under § 10, Art. V, Const. of Mo., 1945.

The facts are set out in the opinion of the Court of Appeals, to which reference is made for a more detailed statement than is required for present purposes. Plaintiff, a pedestrian, was injured about 1 P. M., March 5, 1945, as the result of colliding with one of defendant's streetcars as he was crossing the irregular intersection at Main and 29th Streets. Main runs north and south, and at the point in question is about 76 feet in width. It approaches 29th from the north on an upgrade of about five per cent. West of Main, 29th is 32 feet in width, but extending from Main eastward (because it merges with Warwick) it is in excess of 84 feet wide, resulting in the northeast corner of the intersection being 50 or 60 feet farther north than the northwest corner. There are double streetcar tracks, 15 feet 3 inches in total width, down the approximate middle of Main. The east rail of the northbound track is 31 feet 1 inch from the east curb line, and the west rail of the southbound track 29 feet 6 inches from the west curb. Situated at the northwest corner is a safety island, of the total length of 67 feet 3 inches, which consists of a 50-foot raised loading platform for southbound streetcars, plus 17 feet 3 inches of tapered concrete abutment on the north end. This loading platform is close to, and parallel with the west rail of the southbound track. The streetcar was southbound, and plaintiff was walking southwesterly across the intersection from the filling station at the northeast corner toward the south end of the safety zone, where he expected to board a streetcar. There was a sharp conflict in the evidence as to whether plaintiff walked into the side of the streetcar several feet back of the front end (as shown by defendant's evi-

dence), or whether, according to the evidence on plaintiff's behalf, he was on the track ahead of the streetcar, and was struck by it.

Plaintiff testified on direct examination to this effect: That as he reached the east rail of the northbound track, he saw an automobile rapidly approaching from the southwest. It was headed toward him, and only 10 or 12 feet away. The streetcar was then "about 10 feet" north of the "tip end" of the safety zone. He quickened his pace to escape the approaching automobile, and veered his course from southwest to "about straight to the west," thus permitting the automobile to pass behind him, but in close proximity to his person. This accomplished, he "discovered and thought about where I might be getting to, and I looked and the streetcar was coming, I thought, faster than I did think before and it was within ten feet of me or something like that. I threw my hand up and was going to turn to get out of the way and at that time the streetcar hit me." Asked if he was able "to take a step in any direction or move out of its way" after discovering the streetcar "approximately ten feet" away from him, plaintiff replied that he "got partly turned * * * was jumping back off the track" when the impact occurred, and he was knocked down.

Plaintiff's witness Boeger, who operated the filling station at the northeast corner of the intersection, testified that when the plaintiff got on the east rail of the southbound track, the distance separating him from the streetcar was "approximately 15 feet or the length of an automobile * * * somewhere in there; I think the length of an automobile is 16 to 18 feet." He fixed the rate of speed of the streetcar at that time as "about 8 miles an hour." Mrs. Burkard, another eye witness testifying for plaintiff, who lived at 17 East 29th Street, placed the streetcar at "about 15 feet" from plaintiff when the latter got on the east rail of the southbound track, and estimated its speed at "7 or 8 miles an hour, something like that, or 10." There was other testimony to the effect that the streetcar was going as slow as 6 miles an hour, and that it could have been stopped in 8 or 9 feet at 6 miles an hour, in about 10 feet at 8 miles per hour, and in about 12 feet at 10 miles an hour.

Submission was solely under plaintiff's assignment of humanitarian negligence in failing to stop the streetcar after plaintiff's peril arose. Whether a case was made for the jury on this issue is, in reality, the one question presented here, although the matter is treated at length under different assignments of error, each containing various subheads.

Defendant vehemently contended as the basis of its application to transfer, and reiterates in this court that no humanitarian case was made for the reason that plaintiff's testimony on cross-

examination[1] constituted a binding admission against interest that he was struck at "almost the instant he reached the east rail of the track," and that the effect of this in precluding recovery for failure to stop after he got in imminent peril on the track, was: (1) To destroy his testimony on direct that the streetcar was approximately ten feet away; (2) To preclude him from relying on the testimony of other witnesses at variance with such admission; (3) To control over his indefinite testimony that the streetcar was "approximately" 10 feet away; (4) and that the estimates of plaintiff and his witnesses that the car was 10 feet or more away must be disregarded as contrary to physical facts and inherently impossible.

Numerous supporting authorities are cited, but it will be unnecessary to discuss them unless it be first determined that the admissions of plaintiff on cross-examination were of such a nature as to make them applicable. Addressing ourselves to that question, it may be said that the difficulty with the excerpts relied on is that they are mere excerpts, and do not accurately reflect the effect of the whole cross-examination. For example, excerpt (C) omits the following crucial statement which appears as the last clause of the very sentence excerpted, to wit: "I would say about ten feet." So that plaintiff's answer was, "* * * I hesitated on the track and then at the same time or about the same time I looked and the streetcar was approaching right on me, *I would say about ten feet.*" Excerpts (D) and (E) are more fully understood when read in connection with his further statements on the same cross-examination: "I was very frightened. I didn't know where to jump, back in the way of what I had just gotten out from in front of, *and I hesitated* and I got hit by the time I threw my hands up and tried to turn." "Q. Why didn't you take one step backward and avoid this accident? A. How do I know why? I didn't." Nor is the transcript of plaintiff's testimony touching his police court statement any more conclusive than the foregoing.

It is plain that these statements of plaintiff on cross-examination did not squarely conflict with his prior testimony, but that they were, like such prior testimony, estimates, as the Court of Appeals concluded in properly applying State ex rel. Thompson v. Shain, 351 Mo. 530, 173 S. W. 2d 406, which distinguished Elkin v. St. Louis Public

---

[1] (A) "That he reached the east rail of the southbound track at 'between a walk and a run or jump'; (B) That he looked 'when I thought where I might be getting to, and it was too late then to do anything about it, only to try to turn out of the way'; (C) That 'I hesitated on the track and then at the same or about the same time I looked and the streetcar was approaching right on me'; (D) That all he 'got done' was to 'lift my left foot * * * in the air'; (E) That he 'didn't have time' to take a step backwards; (F) That he 'could have been correct' when he stated under oath in police court that the streetcar was 2 or 3 feet away; (G) That he so testified in police court 'knowing it was right on me.' "

Service Co., 335 Mo. 951, 74 S. W. 2d 600, and similar cases which are here relied on. In any view that may be taken of plaintiff's statements on cross-examination, they fall short of constituting a binding admission against interest that he was struck at almost the instant he reached the east rail, with the consequent effect contended for by defendant.

The record amply supports, and we are satisfied with, the holding of the Court of Appeals that there "was substantial evidence that when plaintiff reached the east rail of the southbound track, the streetcar was 10, 12, 15 or 18 feet from him, traveling at 6, 8 or 10 miles an hour, and that defendant's operator saw, or by using ordinary care could have seen, plaintiff there in a position of imminent peril and could have stopped the streetcar under the other requirements of the instruction within 8, 9, 10 or 12 feet and in time to avoid the accident."

The judgment should be, and it is affirmed. All concur.