Jasper H. FISHER, Plaintiff-Respondent,

v.

Darrell G. GUNN, Defendant-Appellant.

No. 43927.

Supreme Court of Missouri.

Division No. 1.

Sept. 13, 1954.

Horace F. Blackwell, Jr., William H. Bates, Lathrop, Righter, Blackwell & Parker, Kansas City, for appellant.

John W. Schwartz, Hale Houts, J. D. James, Hogsett, Houts & James, Kansas City, for respondent.

COIL, Commissioner.

Plaintiff-respondent obtained a $12,500 verdict and judgment for personal injuries and property damage allegedly resulting from defendant-appellant's negligence. Plaintiff submitted his case solely on defendant's alleged humanitarian negligence in failing to slacken or swerve. Defendant now contends that: Plaintiff failed to make a submissible case; the court erred in excluding evidence and in giving an instruction; and the judgment is excessive.

On August 11, 1951, plaintiff, Jasper H. Fisher, accompanied by his wife and child, drove his automobile north on U. S. Highway 169 at about 25 miles per hour, intending to turn left into a driveway on the west side of the highway. About one mile south of Gashland, Missouri, when about 150 feet south of the driveway's south edge, he gave a "left turn" hand signal and started to turn at a place about 10 feet south of the driveway, at which time he had reduced his speed to about five m. p. h. While traveling the 150 feet, he looked to the north and south and saw no traffic approaching. As he began his turn, he again looked north and saw defendant's automobile about 250 feet to the north, traveling south. Plaintiff, nevertheless, proceeded to make an "angling" left turn from the point 10 feet south of the drive. He had partially executed the turn so that when the front wheels of his automobile were about one foot off the pavement's west edge and in the driveway, defendant's automobile struck the right side of plaintiff's automobile and caused it to "sail through the air" and become stationary, headed east, against a telephone pole 35 feet south of the driveway, on the west side of the highway.

In plaintiff's direct examination: "Q. Do you have any judgment as to the speed the car [defendant's automobile] was going at that time? A. No sir, I have no judgment of the speed the car was going." In plaintiff's cross-examination: "Q. Now, after the accident you stepped off and measured from the driveway to the point north of the driveway 225 or 250 feet where you saw Mr. Gunn's [defendant's] car at the time you began your turn, did you not? A. Yes sir. Q. You concluded from that distance and by the use, I think, of a card that you carried in your billfold, Mr. Gunn was going about 65 or 70 miles an hour at the time, did you? A. Yes."

The only witness adduced by plaintiff who testified as to the speed of defendant's automobile prior to and at the time of impact, said that defendant's speed was 60 to 70 m. p. h.—closer to 70 than to 60; that there was no slackening or swerving of defendant's automobile prior to the impact; and that the stop lights on the rear of defendant's automobile did not show "on" until defendant had traveled 30 feet beyond the impact point; and that defendant's automobile stopped about 75 feet beyond the impact point headed southwest with its front wheels off the pavement's west edge.

Plaintiff's further evidence was that, at the time of and prior to the collision, there was no other traffic on the highway so that at the time plaintiff blocked the west travel lane while making his left turn, the east travel lane was unobstructed.

Defendant testified, in part, that as he proceeded southwardly he was following 50 feet behind another southbound car; that he saw plaintiff's car moving at 2–3 m. p. h., when its front wheel was about 2 feet west of the center line; that at that time his (defendant's) speed was 35 m. p. h., and he was less than 50 feet north of the collision point; that at 35 m. p. h., he could have stopped or swerved within 100 feet; that at 65 m. p. h., he could not, within 225 feet, have safely swerved sufficiently to have avoided the collision.

The highway consisted of two 9-foot lanes. There was a hill crest about 1500 feet south of the driveway. One approaching from the south descended the hill, then traveled up a slight rise to the driveway at the crest of the rise. There was a hill crest about 1200 feet north of the driveway. One approaching from the north descended into a "dip", then ascended to the driveway at the crest of the rise. Plaintiff testified that a vehicle approaching from the north could not be seen by one in an automobile 150 feet south of the driveway, if the southbound automobile was in the "dip". Plaintiff said he did not see defendant's automobile when he looked north from a place 150 feet south of the driveway and therefore later "presumed" that defendant's car was then in the "dip".

As we view the evidence, considered most favorably from the standpoint of plaintiff, the question on submissibility resolves itself into whether plaintiff is entitled to use defendant's testimony as to the speeds of defendant's and plaintiff's vehicles, or whether defendant's speed testimony was so contrary to plaintiff's evidentiary theory at the trial as to prevent plaintiff's use of this testimony. If plaintiff is entitled to use defendant's speed evidence, there was substantial evidence to support the hypothesis of plaintiff's main instruction that, after plaintiff came into a position of imminent peril, defendant could have avoided the collision by slackening or swerving. If, on the contrary, plaintiff cannot use defendant's speed testimony, but must rely only upon the speed estimate of the only witness adduced by plaintiff on the subject, then plaintiff failed to prove an essential element of his case, viz., that, at a speed of 60 to 70 m. p. h., defendant could have slackened or swerved after plaintiff was in a position of imminent peril, and thereby could have avoided the collision. Plaintiff does not now contend that there was other evidence to support the last-stated hypothesis, but contends only that he was entitled to use defendant's speed testimony.

Before reaching that question, we note that defendant contends that plaintiff's evidence as to the location of defendant's car at the time plaintiff came into a position of imminent peril was "completely incredible and of no probative force." To support this assertion, defendant has submitted a series of mathematical calculations. However, we are of the opinion that defendant's calculations are based upon two fallacious premises. First, the premise that plaintiff testified, and if so, was conclusively bound by his testimony, that, at the time plaintiff looked north and failed to see defendant's automobile, defendant's automobile was in fact in the "dip". As noted, plaintiff did testify that because he did not see the defendant's car when he looked north when he was 150 feet south of the driveway, and because he could see vehicles not in the "dip" for a considerable distance to the north of the collision point, he, therefore, later presumed that when he first looked north defendant's automobile was in the "dip". We think that the jury reasonably could have found that defendant's automobile, at the time plaintiff first looked north, was not in the "dip" but was, in fact, farther north and was observable but that plaintiff failed to observe it. The second unjustified premise is that plaintiff's automobile traveled a distance of 10½ or 11 feet from the time he began his left turn until the collision. True, on cross-

examination, plaintiff, in answer to a question which contained the suggestion that he traveled 10½ or 11 feet, agreed that he probably did. But plaintiff also testified that he began an "angling turn" when he was about 10 feet south of the driveway, and that at collision time the front wheels of his automobile were about one foot into the driveway. Consequently, in determining the distance that plaintiff's automobile traveled in the turning for the purpose of determining the time consumed in the turn, the jury reasonably could have found that plaintiff's automobile traveled a greater distance during its turn than 10½ or 11 feet.

■ We think it is a matter of common knowledge that the distance from the center of one front tire to the center of the other front tire on plaintiff's Chevrolet automobile was about 4½ feet. Thus, the jury reasonably could have found that, when plaintiff began his turn, his left front wheel was about 6 inches east of the center line. At that time the front of his car was 10 feet south of the driveway. It must follow, then, that plaintiff's right front wheel traveled about the distance of the length of the hypotenuse of a right angle triangle, the other sides of which were each about 15 feet. This means that plaintiff's right front wheel traveled a distance of about 21.21 feet which, at five miles per hour, would require approximately 2.9 seconds. Defendant, about 250 feet away traveling at about 60 m. p. h., would require approximately the same 2.9 seconds to reach the collision point. If, as suggested by defendant, we allow him ¾ths of a second reaction time, defendant still had about 2 seconds and about 176 feet in which to act to avoid the collision. And while it would seem reasonable to say that in a distance of 176 feet an automobile traveling 60 m. p. h. could, by "angling", reach the opposite side of an 18-foot pavement and avoid an automobile blocking the 9-foot west lane, we may not take judicial notice that such could be done with safety to the driver, his passengers, and others. And, as we have pointed out, plaintiff failed to adduce any direct evidence either that defendant's automobile could have been suffi-

ciently slackened or swerved in the 176 feet to have avoided the collision.

But, if defendant was traveling 35 m. p. h. and plaintiff was traveling 3 m. p. h. during the turn, defendant took about 4.9 seconds to travel 250 feet to the collision point, while in the same 4.9 seconds, plaintiff's right front wheel would have traveled about the 21.21 feet prior to collision.

■ Plaintiff was not in imminent peril until he began his turn. This, for the reason that he testified that he saw defendant's car 250 feet away at the time he began his turn. Consequently, irrespective of what the appearances may or should have been to defendant as to plaintiff's apparent obliviousness, plaintiff, by his own testimony, was not oblivious, and "Of course, a plaintiff may destroy a case of apparent obliviousness by testifying that he was not actually oblivious." Turbett v. Thompson, Mo.Sup., 252 S.W.2d 319, 321. But the jury reasonably could have found that plaintiff was in imminent peril the instant he began his left turn.

So that our conclusion is, that plaintiff's evidence was not "completely incredible and of no probative force" but that whether plaintiff's speed was about 5 m. p. h. during his turn and defendant's speed was about 60 m. p. h. when he was 250 feet away, or whether plaintiff's speed was about 3 m. p. h. during his turn and defendant's speed was about 35 m. p. h. when he was about 250 feet away, plaintiff made a submissible case in so far as the credibility of the relative distances and speeds are concerned. But, as we noted, if plaintiff may not use defendant's speed estimate, plaintiff's case failed in an essential particular because of the absence of testimony as to slackening or swerving.

We have repeatedly stated the rule that in determining whether plaintiff made a submissible case, plaintiff is entitled to the benefit of defendant's favorable evidence, under certain specified circumstances. We have stated those circumstances in various ways, but usually we have said, in effect,

that plaintiff is entitled to the benefit of defendant's favorable evidence when that evidence does not contradict plaintiff's own testimony and is not contradictory of plaintiff's fundamental theory of the case. Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782, 786[5,6]; Trower v. Missouri-Kansas-Texas R. Co., 347 Mo. 900, 909, 149 S.W.2d 792, 796[4]; Meese v. Thompson, 344 Mo. 777, 782[1], 129 S.W.2d 847, 850[1]; Smithers v. Barker, 341 Mo. 1017, 1023[1], 111 S.W.2d 47, 50[1,2]; Martini v. St. Louis Public Service Co., Mo.App., 237 S.W.2d 213, 216. We have often held that a plaintiff is not conclusively bound by his own testimony or the testimony of his own witnesses as to estimates of time, speed, and distance. Davis v. Kansas City Public Service Co., Mo.Sup., 233 S.W.2d 669, 674[1]; Pearson v. Kansas City Public Service Co., 359 Mo. 1185, 1189[1], 225 S.W.2d 742, 743; State ex rel. Thompson v. Shain, 351 Mo. 530, 537, 173 S.W.2d 406, 408–409; Cluck v. Abe, 328 Mo. 81, 88, 40 S.W.2d 558, 561[8–10]; Scott v. Kansas City Public Service Co., Mo.App., 115 S.W.2d 518, 523[3]; Tunget v. Cook, Mo.App., 94 S.W.2d 921, 925–926. And we have held that the jury may believe all or none or part of the testimony of any witness. Gould v. Chicago B. & Q. R. Co., 315 Mo. 713, 722–3, 290 S.W. 135, 138; Burr v. Singh, 362 Mo. 692, 696[1], 243 S.W.2d 295, 298[4,5]. These rules are well established; the difficulty is in applying them to various fact situations.

■■■ Plaintiff testified unequivocally on direct examination that he had no judgment as to the speed of defendant's automobile. For our purposes, we shall assume that plaintiff testified *only* that he did not know the speed of defendant's automobile, and ignore his other testimony, heretofore noted, from which a contrary inference might reasonably be drawn. And we are cognizant of the fact that the rule that a party is bound by his own evidence is usually limited to "a party's own testimony". Smithers v. Barker, supra, 111 S.W.2d 50[1,2]. So that, for present purposes, the situation is this: Plaintiff testified he did not know the speed of defendant's automobile; he adduced only one witness to testify to the essential fact of defendant's speed. Now, while plaintiff was not conclusively bound by the testimony of this witness, because that testimony was an estimate of the speed of another automobile (which the evidence showed was based upon the witness' observation of defendant's automobile as it traveled along the highway and not upon any actual knowledge obtained by the use of some mechanical device to accurately measure speed), nevertheless, the fact remains that the *only* evidence in plaintiff's case as to defendant's speed was this one witness' estimate of 60–70 m. p. h. It is significant that plaintiff did not call defendant as a witness to prove, as part of plaintiff's case, defendant's own estimate of his speed, and whether he could have slackened or swerved at that speed within a certain distance. Likewise, plaintiff did not attempt to adduce in evidence, as part of his case, portions of defendant's deposition which may have been taken prior to the trial. Thus, it may not be said that plaintiff's evidentiary theory at the trial was that, inasmuch as he did not know the speed of defendant's automobile, he was submitting to the jury all the available speed estimates, including the widely varying estimates of his only witness and of the defendant himself. On the contrary, plaintiff chose to support his humanitarian case by an evidentiary theory which basically tended to prove defendant's *high speed.* We have concluded that even speed estimates (although recognizing that they are estimates and that a plaintiff is not ordinarily bound by estimates), where one such estimate is made by plaintiff's *only* speed witness, and the other is made by a defendant (not plaintiff's witness), may vary so greatly as to foreclose plaintiff from using defendant's speed estimate. We cannot escape the conclusion, under the particular facts of this case, that plaintiff's evidentiary theory, upon which he based his right to recover, was that defendant was traveling at a *high* speed, and that he may not have the benefit of defendant's *low speed* testimony to make a submissible case.

We think no formula may be evolved by which to determine when and under what particular circumstances plaintiff may rely upon defendant's evidence as to speed in order to make a submissible case. And we make no attempt to reconcile the adjudicated cases which have applied the aforestated rules. We rule only that the facts and circumstances of this case cast it clearly in the category of those cases in which defendant's estimate of speed and any reasonable inference therefrom tended to establish a fact so contradictory of plaintiff's evidentiary theory, that plaintiff was not entitled to rely upon defendant's speed estimate.

Defendant's contentions as to the erroneous exclusion of evidence by the trial court are likely to recur in the event of another trial and thus we should determine those matters. Defendant's counsel asked plaintiff the following question: "Were you convicted in the magistrate court in North Kansas City or September 8, 1951, for careless and imprudent driving?" A conference out of the hearing of the jury disclosed, and defendant offered to prove, either by cross-examination or by a certified copy of the conviction, that on September 8, 1951, plaintiff was convicted of careless and imprudent driving as a result of the collision out of which the instant lawsuit arose. An objection to the offer of proof was sustained by the trial court.

We shall assume (which was apparently the fact) that the conviction for careless and imprudent driving referred to was properly charged by an information filed in a magistrate court which sufficiently described the manner in which plaintiff was alleged to have driven carelessly and imprudently in violation of Section 304.010 (all section references are to RSMo 1949, V.A.M.S.). See: State v. Ball, Mo.App., 171 S.W.2d 787, 791–793.

Section 304.010 provides in part that "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, * * *." Section 304.570 provides that any person who violates any provision of Chapter 304 (of which Section 304.010 is a part), for which no specific punishment is provided, shall be fined or imprisoned in the county jail or punished by both such fine and imprisonment. There is no specific punishment provided for violations of Section 304.010. Section 491.050 provides that any person who has been convicted of a *criminal offense* is a competent witness, but that the conviction may be proved to affect the witness' credibility, either by cross-examination or by the record of the conviction, and that the cross-examiner shall not be concluded by the witness' answer. Section 556.010 defines *criminal offense* as used in Section 491.050 (or as used in any other statute) as *any misdemeanor* or any felony for which punishment by fine or imprisonment, or by both, may be imposed. Section 556.040 defines *misdemeanor* as used in Section 556.010 (or as used in any other statute) as including every offense punishable *only* by fine or by imprisonment in the county jail or by both such fine and imprisonment.

It appears, therefore, that careless and imprudent driving in any manner prohibited by Section 304.010 is, by virtue of Section 304.570 and the other statutes above noted, a misdemeanor. And Section 491.050, as well as decisions beginning with State v. Blitz, 171 Mo. 530, 539–542, 71 S.W. 1027, 1029, 1030, construing that section, means that convictions for misdemeanors may be shown to affect the credibility of a witness. This court in 1902 suggested in State v. Blitz that there may be grave doubt about the wisdom of a statute which permits a conviction for a misdemeanor which is not necessarily inconsistent with a good moral character to be proved to affect the credibility of a witness and said that if such a statute "is unwise and was ill-considered, the more strictly it is enforced the sooner its defects will appear, and the sooner will the power that created it bring about its destruction." 71 S.W. 1030. And the statute according the right to show a conviction to affect credibility applies in civil as well as criminal actions. Chouteau Land & Lumber Co. v. Chrisman, 172 Mo. 610, 617, 618, 72 S.W. 1062, 1065; Collins v. Leahy,

Mo.App., 102 S.W.2d 801, 810[12–15]; Myles v. St. Louis Public Service Co., Mo. App., 52 S.W.2d 595, 597, 598. And it has been held that it is proper on cross-examination to show not only the conviction but to show of what offense the witness had been convicted. State v. Gentry, Mo.Sup., 212 S.W.2d 63, 64[4].

■ It is true, as plaintiff contends, that the scope and extent of cross-examination in the ordinary civil suit is discretionary with the trial court and its ruling will not be disturbed unless an abuse of discretion is shown. Hungate v. Hudson, 353 Mo. 944, 948[2], 185 S.W.2d 646, 649[6–10], 157 A.L.R. 598; Holden v. Berberich, 351 Mo. 995, 1002, 174 S.W.2d 791, 795, 149 A.L.R. 929. Defendant relies upon a concurring opinion in the last cited case, in which the question was whether the trial court erred in granting a new trial because plaintiff's principal witness, over plaintiff's objection, was required to answer that he had been *indicted* (in connection with the death of plaintiff's husband for whose alleged wrongful death the action had been brought) on a charge of driving while intoxicated, and that the charge was then pending undisposed of. The majority opinion affirmed the order of the trial court. In a concurring opinion, one of the judges stated: "My special concurrence in this case is based on the fact that the scope of all discrediting cross-examination is more or less within the discretion of the trial court, 70 C.J., § 1162, p. 956; State v. Rose, supra, 339 Mo. loc. cit. 327, 96 S.W. loc. cit. 504 (6); and for reasons of judicial policy is restricted in some instances to avoid confusion of issues and undue prejudice. 1 Wigmore on Evid., 3d Ed., § 42, p. 441; 6 id., § 1904, p. 574. As said by the same author, 1 id., § 194, p. 646, sometimes impeaching evidence is *too* relevant, in the sense that the prejudicial effect thereof outweighs its evidential value on the *real* issues." 174 S.W.2d 795.

However, on the preceding page, 174 S.W.2d 794, the concurring opinion made it clear that impeachment under the statute permitting a conviction to be shown to af-

fect credibility, was under "the arbitrary rule of the statute." "Of course evidence is incompetent in any case to show a witness has been merely *charged* with a crime when the effort is to impeach him under Sec. 1916, which requires a showing that he has been *convicted* of a criminal offense. But that is a wholly different thing. Impeachments of that character are under the arbitrary rule of the statute. The former conviction may have been of an offense wholly unrelated to the case in which the witness is testifying, and at a different time and place."

■ True, it has been said that "It is not permissible to show a conviction of crime so remote as not to reasonably bear on the present character of the witness." Page v. Payne, 293 Mo. 600, 620, 240 S.W. 156, 162; Collins v. Leahy, supra, 102 S.W.2d 811. And it has been indicated that the trial court has a discretion as to whether a certain conviction was so remote as not to bear upon the credibility of a witness. State v. Dalton, Mo.Sup., 23 S.W.2d 1, 6[19, 20]. Aside from the question of "remoteness", we find no case indicating that the right to show a conviction to affect credibility is within the discretion of the trial court. And, of course, there is no question of "remoteness of the conviction" in this case. It appears to us that the statute, Section 491.050, has arbitrarily accorded to a litigant the right to show a prior conviction for felony or misdemeanor to affect the credibility of the witness. And, while a trial court may generally control cross-examination within proper bounds, still the *right* of cross-examination is an *absolute right* and the *bounds of the cross-examination,* in so far as concerns one's right to show a prior conviction, have been fixed by the statute.

■ Obviously it would be prejudicial to plaintiff in the instant case to have before the jury that he had been convicted of careless and imprudent driving in the very collision which is the subject of the instant lawsuit. There may be doubt as to the wisdom of arbitrarily permitting convictions for violations of traffic rules to be shown, irrespective of whether a particular conviction would probably affect the credibility of

the witness. Nevertheless, we are of the opinion that under the law as written, the question asked plaintiff on cross-examination was a proper one which defendant was entitled to have answered. Of course, plaintiff would be entitled to an instruction explaining and limiting the purpose and effect of such evidence. State v. Stokes, 288 Mo. 539, 556 [IV], 232 S.W. 106, 110[4].

Defendant also contends that the trial court erred in excluding three exhibits which were offered as the office records of Dr. Ralph Mueller, relating to, and reflecting an examination of, plaintiff.

Plaintiff claimed that he suffered a herniated disc as a result of the collision. Defendant conceded that plaintiff had a herniated disc for which he had been operated prior to trial, but sought to show that the disc condition was the result of a prior accident. Plaintiff testified that on July 3, 1951, about 5 weeks prior to the instant collision, he suffered a sacroiliac sprain while helping attach a cultivator to a tractor. Plaintiff sought to show that this sprain had been aggravated by the instant collision, and that the herniated disc was not caused by the prior accident. Medical testimony tended to show that one of the symptoms considered in diagnosing a herniated disc is that pain radiates from the back or hip down the leg of the patient.

Exhibit 32, headed "Ralph E. Mueller, M. D., Harold V. Zuber, M. D." and containing a check mark following Dr. Mueller's name, contained this, under the heading, "P. I." (present illness):

"Inj the lower back in handlg a tractor July 3—

"Has had mor or less pain ev since in past few days p rad dwn left leg."

Under the heading "Examination" appears, among other things: "St leg rasg L marked1 1 & causes p in Left Sciatic".

Thus, Exhibit 32, if otherwise admissible, was relevant because it tended to show that the herniated disc may have pre-existed the collision.

Defendant contends that the doctor's record, including the X-rays, were admissible under the Uniform Business Records as Evidence Law, Sections 490.660 to 490.690. We shall not specifically consider the X-rays, Exhibits 33 and 34, because their relevancy was not disclosed. Assuming that at another trial their relevancy is made apparent, then the same considerations which affect the admissibility of Exhibit 32 will apply to and control the admissibility of Exhibits 33 and 34.

Section 490.670 provides that the term "business" shall include every kind of business, profession, etc. Section 490.680 provides: "A record of an act, condition or event, shall, insofar as relevant, be competent evidence of the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Defendant's witness, Isabel Quade, testified, in substance, that she had been employed by Drs. Mueller and Zuber, who officed together, until Dr. Mueller's retirement in 1952; that she was still employed in the same office by Dr. Zuber (her total period of employment covering about 21 years); that she had supervision and charge of the office records, including the patients' histories and X-rays; that she had produced the office record pertaining to Jasper Fisher; that the first part of the record was in her own handwriting (this part disclosed the patient's name, address, age, telephone number, occupation, date, by whom referred, and the general complaint of patient); that in the regular routine of the office she, or another office girl, obtained this preliminary data, then prepared the patient for the doctor; that the doctor would then see the patient and, at the time of his examination, make the notes heretofore referred to under "P.I." and "Examination"; that the entries under "P.I." and "Examination" were in the handwriting of Dr. Mueller. The witness

testified that she could not say that she was present at the time Dr. Mueller made the particular entries and, therefore, did not have personal knowledge that these particular entries were made at the time of the examination of the patient. As noted, however, the witness did testify that like entries, in the regular routine of the office, were made by the doctor at the time of the examination.

■ Examining the exhibit in the light of the requirements of the Act, we are of the opinion that the exhibit was admissible and that there was no sufficient reason for the trial court to have excluded it. Certainly, under the very terms of Section 490.-670, a physician's office records are records of a "profession" encompassed by the terms of the Act. Freedman v. Mutual Life Ins. Co. of New York, 342 Pa. 404, 413, 21 A.2d 81, 86[6, 7], 135 A.L.R. 1249. We have heretofore demonstrated that the information appearing on Exhibit 2 was relevant. The exhibit constituted the record of "an act, condition or event". Melton v. St. Louis Public Service Co., Mo.Sup., 251 S.W.2d 663, 670, 671[16, 17]. The entries were within the scope of the doctor's "business". There appears to be no question as to the professional competency of Dr. Mueller to have made the entries in question. The entries under "P.I.", while not directly appearing by any words used in the record to have been statements made by the patient to the doctor, show that the information there contained must have been given to the doctor by the patient. It is also apparent that the statements under "P.I." constituted information as to the condition of the patient which the doctor needed in order to properly diagnose and treat the patient. Melton v. St. Louis Public Service Co., supra. A qualified witness testified as to the mode of the record's preparation, and that it was made in the regular course of business. We do not think it was essential that the custodian have had personal knowledge or recollection that these particular entries were made "at or near the time of the act, condition, or event" so long as she had personal knowledge that all like entries were made,

in the regular course of business of that particular office, at the time of the "act, condition or event". This unless there was other evidence which indicated or tended to show that the regular course of business was not followed with reference to the entries on the particular record. Furthermore, plaintiff testified that Dr. Mueller examined him only on the one occasion and that the doctor's treatment on the one occasion gave plaintiff immediate relief. And there was nothing developed in the evidence which would tend to cast any doubt on the proposition that the entries were made by Dr. Mueller at the time he examined the patient. There was no question about the fact that the person to whom the record referred was in fact the plaintiff. This, again, because plaintiff testified that he was examined by Dr. Mueller on or about July 30, 1951, for the condition which had developed by reason of the "tractor" accident of July 3, 1951.

■ We are of the opinion that the patient's statements appearing under "P.I." were admissible as statements by plaintiff against his interest. Melton v. St. Louis Public Service Co., supra, 251 S.W.2d 670, 671. We are also of the opinion that the entries made by Dr. Mueller reflecting his findings on examination were admissible. "Those by whom the records were made are not parties to this action and have no interest in its termination or incentive to falsify the relevant facts. They personally examined the insured and prescribed for him. They heard his statements of symptoms made for the purpose of medical treatment. These facts were recorded at the time they transpired and in the course of the professional business of the physicians. They were fully as competent to compile these records as those by whom the records of the usual hospital are prepared. Certainly the records should be documentary evidence of the number of visits of the insured and the treatment prescribed. They should also be competent evidence of the statements made by the insured concerning his symptoms." Freedman v. Mutual Life Ins. Co. of N. Y., supra, 21 A.2d 86(6, 7).

While the trial court must of necessity have a wide discretion to determine whether he is satisfied that "the sources of information, method and time of preparation" of any given record "were such as to justify its admission", and while an appellate court should not ordinarily interfere with the exercise of such discretion, yet, where, as here, there appears nothing in the evidence which indicates any factual basis upon which to exclude the evidence in the exercise of a sound discretion, we must hold that the trial court erred in excluding the exhibit.

Some of the entries on the exhibit and some parts of other entries are abbreviations or letters. Our examination of the exhibit, however, convinces us that the jury unaided would understand the meaning of some of the entries: And, if a witness had personal knowledge that *the particular doctor* who made the record customarily used certain abbreviations and letters to mean certain things, such a witness could testify to his knowledge in that respect to aid the jury in understanding the record entries.

Our disposition of the case makes it unnecessary to consider defendant's other contentions.

It appears from the record in this case that plaintiff should have an opportunity at another trial to adduce evidence on the issue of defendant's ability to have swerved, or to have slackened and swerved, in the time and distance available. We, therefore, remand the case for a new trial.

The judgment is reversed and the cause remanded.

VAN OSDOL and LOZIER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.