Dorothy John FORBIS, Plaintiff-Appellant,

v.

ASSOCIATED WHOLESALE GROCERS, INC., Defendant-Respondent.

No. 9584.

Missouri Court of Appeals,
Springfield District.

Aug. 13, 1974.

Motion for Rehearing or to Transfer
to Supreme Court Denied
Aug. 28, 1974.

Application to Transfer Denied Oct. 14, 1974.

Thomas G. Strong, Mathew W. Placzek, Jr., Farrington, Curtis, Strong, Knauer & Hart, Springfield, for plaintiff-appellant.

Donald E. Bonacker, Jerry L. Reynolds, Springfield, for defendant-respondent.

BILLINGS, Judge.

Plaintiff appeals from an adverse nine-man jury verdict and judgment in her suit for the wrongful death of her husband, contending reversible error was committed by the trial court's refusal to permit her cross-examination of defendant's driver as to prior criminal convictions. We have concluded that our Supreme Court decisions construing § 491.050, RSMo 1969, V. A.M.S., gave the plaintiff an *absolute right* to show the prior convictions for the purpose of affecting the credibility of the driver-witness and accordingly, we reverse and remand the case for a new trial.

Plaintiff's husband, William C. Forbis, had been travelling in an easterly direction

on Highway 60 in Marionville, Missouri, on July 6, 1972, and had stopped in order to make a left turn. A tractor-trailer owned by the defendant and driven by Donald Adams [originally a defendant but dismissed shortly before trial commenced] was also travelling in an easterly direction some distance behind Forbis. A vehicle driven by a Mrs. Williams was west-bound on the highway at the time of the collision. Both the tractor-trailer and Mrs. Williams' car struck the Forbis automobile and as a result William Forbis was killed.

In pre-trial discovery proceedings the plaintiff directed the following interrogatory to Adams, then a co-defendant:

"Have you ever been convicted of a crime? If so, please state the date, the nature of the conviction, the punishment assessed and the court in which the charge was filed and the conviction obtained."

To this question Adams, under oath, replied:

"Approximately at Christmas, 1971, I was convicted of speeding in Miami, Oklahoma, and I was fined. When I was about 17 years old I was convicted of passing in a non-passing zone in Vinita, Oklahoma, and was fined."

On the day of the trial but before voir dire of the panel commenced, the defendants [Associated and Adams] filed and presented a motion to suppress any evidence of or mention by plaintiff of various matters, including Adams' 1971 Oklahoma speeding conviction.[1] The motion alleged "that such matters are irrelevant and immaterial . . . and highly prejudicial to Defendants" and that as to the speeding conviction it was also "too remote in time and too emotional and prejudicial to be relevant."

After sustaining the motion as to subsequent accidents by Adams or other drivers and as to municipal court charges or dispositions the court initially ruled that the speeding conviction would be irrelevant, whether it occurred in municipal or magistrate court, because it did not involve moral turpitude. Relying on Adams' answer to the interrogatory plaintiff sought and offered to prove both of the Oklahoma convictions by way of cross-examination of Adams for the purpose of affecting his credibility as a witness.[2] The court then ruled that without certified copies of the record these convictions could not be shown.

Plaintiff voluntarily dismissed the suit as to Adams and trial commenced. Before Adams took the stand as defendant's witness the plaintiff sought a reconsideration of the court's earlier ruling. Her offer of proof, based on the interrogatory and answer thereto, and Adams' deposition, was rejected by the court which held that absent documentary proof to show that the Oklahoma convictions were "real criminal convictions" plaintiff could not cross-examine Adams about them. Additionally, the court ruled that the conviction for passing in a no-passing zone when Adams was 17 years old was "too remote."[3] Abiding the court's rulings, plaintiff did not cross-examine Adams concerning the two Oklahoma convictions.

Defendant seeks to uphold the ruling of the trial court by first contending plaintiff failed to make a submissible case of negligence under the rear-end doctrine and thus any error in prohibiting cross-examination of Adams as to the convictions was harmless. Defendant further avers that plaintiff's offer of proof was insufficient because plaintiff failed to prove "facts

---

1. Four categories were included in the motion: subsequent accidents by Adams and other Associated drivers; any charge or disposition of charges in Municipal Courts; the 1971 Oklahoma speeding conviction; and, the incurring and amount of Forbis' funeral expense.

2. By agreement plaintiff's offers of proof were to have the same force and effect as if made during cross-examination of Adams.

3. There was no evidence before the court as to Adams' age when this ruling was made. He thereafter testified he was 26 years old [June, 1973].

amounting to a conviction of a crime or show . . . Adams had the knowledge and the capacity to distinguish between conviction of a violation of a criminal statute and of an ordinance." Lastly, defendant attempts to question the constitutionality of the Supreme Court's interpretation of § 491.050, RSMo 1969, V.A.M.S.

■ We first consider defendant's point that any error in the court's refusal to permit the impeachment of its driver by showing the prior convictions was harmless by reason of plaintiff's failure to make a submissible case of negligence. In so doing "we must consider all the evidence in a light most favorable to [plaintiff] and take [her] evidence as true if not entirely unreasonable or opposed to physical law, and must give [her] the benefit of all reasonable inferences arising from the evidence and must reject all unfavorable inferences." Vaeth v. Gegg, 486 S.W.2d 625, 628–629 (Mo.1972). "Testimony favorable to plaintiff must be accepted as true in deciding the question of submissibility" [Helming v. Dulle, 441 S.W.2d 350, 352 (Mo.1969)] and defendant's evidence must be disregarded except where it aids plaintiff's case. Kinder v. Pursley, 488 S.W.2d 937, 939–40 (Mo.App.1972).

Plaintiff's version of the accident was that the defendant's truck-trailer struck the Forbis vehicle from the rear as deceased was stopped, waiting to turn left, propelling Forbis' car into the path of the oncoming Williams' vehicle. The testimony of witness Dodson is supportive of the application of the rear-end doctrine and plaintiff's theory that defendant's rig first struck the Forbis automobile from the rear. Further support for plaintiff's submission is found in the testimony of defendant's witness White as well as descriptive testimony of marks and gouges on the pavement and evidence concerning the damage to the rear end of the Forbis car and the front portion of defendant's truck.

"It is negligence for the operator of an automobile upon the public highways of this state, following another automobile proceeding in the same direction, to allow and permit the front of his automobile to come into violent contact and collision with the rear end of an automobile in front of him." Witherspoon v. Guttierez, 327 S.W.2d 874, 880 (Mo.1959). Dodson was driving a truck ahead of the Williams vehicle. He saw the Forbis vehicle stopped, with its left blinker turn signal on, in the eastbound lane. After Dodson's truck passed the Forbis car he met defendant's rig beyond that point. Defendant's truck was not slowing. Dodson said: "Well, I couldn't see how that boy [Adams] was going to get stopped behind that car. This man [Forbis] had never moved. I was looking in my mirror and handling my truck at the same time. But I just didn't think the boy could get stopped and I felt sorry for him." Dodson, through his side mirror, watched defendant's truck strike the rear of the Forbis vehicle. Following this impact, Dodson then saw the Williams car come in view, moving through the fire and smoke.

Witness White was travelling in the same direction as defendant's truck and was behind it. He saw the truck strike the rear of the Forbis car and did not see any prior collision between any vehicles before defendant's truck struck the Forbis vehicle.

Physical evidence at the scene, described by other witnesses, as well as photographs of the front of defendant's tractor and the rear of the Forbis car [Gaynor v. Horwitz, 464 S.W.2d 537 (Mo.App.1971)], also support the submissibility of the rear-end doctrine. It was defendant's theory that during the process of making a left turn the Forbis car was first struck by the Williams automobile and knocked backwards into the path of the tractor-trailer. However, Adams did not remember seeing the Williams car coming towards him or the fact that a third vehicle was involved in the collision. He did not see or hear any impact between two cars in front of him before his rig struck the Forbis car in the rear. The highway was straight, it was a bright and

clear day, and Adams' view was unobstructed for one-quarter of a mile west of the collision scene. We hold plaintiff's evidence sufficient to submit defendant's negligence under the rear-end doctrine.

■ This brings us to the determinative issue raised by the trial court's prohibiting plaintiff's cross-examination of Adams as to the latter's convictions. § 491.050, RSMo 1969, V.A.M.S, an enabling statute removing the common law disqualification of a person convicted of a criminal offense as a witness provides: "Any person convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer."

This statute was enacted by the Missouri Legislature in 1895 [§ 8944b, RSMo 1889, Laws 1895, p. 284] and has remained unchanged since that date. In State v. Blitz, 171 Mo. 530, 71 S.W. 1027, 1030–1031 (1903), the court carefully considered the import of the statute and said: "Now, it will be observed that this section makes a very material alteration in the rules of evidence. It first provides, by the broad language that 'any person who has been convicted of a criminal offense,' such conviction may be proved to affect his credibility. This leads us to inquire, what is a criminal offense? . . . The term 'criminal offense' was doubtless used, and will be presumed to have been used, in section 4680 [now § 491.050], with full knowledge of the meaning of that term as defined in section 2396, Rev.St.1899 [now § 556.010], which provides, 'The terms "crimes," "offense" and "criminal offense," when used in this or any other statute, shall be construed to mean any offense, as well misdemeanor as felony, for which any punishment by imprisonment or fine or both may by law be inflicted.' . . . This section is not directed to the subject of impeachment of defendants in criminal cases. It was, as a rule, applicable to all witnesses who may testify in a case, and does not undertake to designate the class of witnesses to which its provisions apply. . . . This act was not simply declaratory of the well-settled rule, 'that a prior conviction of a witness had to be as to an infamous crime.' If such had been the intention of the legislature, they would have used in section 4680 [§ 491.050] the term 'infamous crime,' instead of 'criminal offense,' both of which terms are clearly defined by our statute. If the term 'infamous crime' had been used, then, clearly, would it be held as simply declaratory of the well-settled rule; but instead they use the broad term, 'criminal offense,' which presumptively was used in the sense as defined by the statute. It is further urged that a penal offense, not infamous, is not necessarily inconsistent with a good moral character. This might furnish a valid reason against the enactment of the law, but furnishes none against declaring it as the law after it is enacted. . . . While we doubt very seriously the wisdom of this sudden and apparently unnecessary change of the long-established rules of evidence, which have been uniformly followed for so many years, doubtless on account of their being based upon that most appropriate foundation of reason and justice, yet, if this change is unwise and was ill-considered, the more strictly it is enforced the sooner its defects will appear, and the sooner will the power that created it bring about its destruction."

Since the decision in *Blitz* the Supreme Court of this state has uniformly and consistently held that the statute confers an absolute *right* to show prior convictions and the nature thereof for the purpose of impeaching a witness, both in criminal and civil cases. " . . . [W]hile a trial court may generally control cross-examination within proper bounds, still the *right* of cross-examination is an *absolute right* and the *bounds of the cross-examination*, insofar as concerns one's right to show a prior

conviction, have been fixed by the statute." Fisher v. Gunn, 270 S.W.2d 869, 876, (Mo. 1954); State v. Meyer, 473 S.W.2d 374, 376 (Mo.1971), State v. Morris, 460 S.W. 2d 624, 627–628 (Mo.1970); State v. Busby, 486 S.W.2d 501 (Mo.1972).

We recognize that despite such unequivocal pronouncements of the absolute right to impeach by prior convictions, there have been occasional intimations by some Missouri decisions that it is not permissible to show a conviction of a crime so remote as to not bear on the present character or credibility of the witness. Page v. Payne, 293 Mo. 600, 240 S.W.2d 156 (1922); State v. Dalton, 23 S.W.2d 1, 6 (Mo.1929); Collins v. Leahy, 102 S.W.2d 801, 811 (Mo. App.1937); Fisher v. Gunn, supra; Willis v. Wabash Railroad Company, 284 S.W.2d 503, 512 (Mo.1955).[4]

■ The references to the remoteness exception found in these cases do not seem to have ever borne fruit and, indeed, cases contemporary with those just cited have indicated the remoteness exception was cast upon ground made barren by § 491.-050. Thus, in 1924 the court characterized defendant's assertion in State v. Taylor, 266 S.W. 1017 (Mo.App.1924) that his conviction 10 or 12 years before trial was too remote to affect his credibility to be "without merit" by reason of the statute. In Jackson v. City of Malden, 72 S.W.2d 850 (Mo.App.1934), the court held it was not error for the trial court to refuse to strike evidence elicited on cross-examination that the witness had been in reform school some 35 years before the trial.[5] In so ruling, the court said at 855: ". . . The chances are that it was so remote that it did not affect . . . credibility; yet under the provisions of [§ 491.050], it was not error to admit such testimony." A survey of the cases decided under the statute indicates that no time limit has been imposed on the admissibility of a prior conviction for impeachment purposes. State v. Taylor, supra; Jackson v. City of Malden, supra; State v. Heusack, 189 Mo. 295, 88 S.W. 21 (1905) (25 years); State v. Bridges, 349 S.W.2d 214 (Mo.1961) (27 and 18 years); Smile v. Lawson, 506 S. W.2d 400 (Mo.1974) (20 years).

We are of the view that more recent decisions of our Supreme Court strongly indicate that the remoteness exception, or, for that matter, other grounds of exclusion followed in some jurisdictions, will not blossom in the field of judicial discretion absent legislative tilling. The most recent case holding and re-affirming the absolute right to show prior convictions solely to affect credibility, by reason of the statute is State v. Busby, 486 S.W.2d 501 (Mo. 1972). The court expressly rejected the "minority" discretionary rule followed in some jurisdictions as to the use of prior convictions for the purpose of impeach-

---

4. Page v. Payne, supra, held it was within the trial court's discretion to exclude evidence of a witness' *alleged acts* of adultery more than 10 years before trial. No conviction was involved.

  State v. Dalton, supra, implies that the trial judge has discretion to permit questioning of a witness as to *only recent* convictions. Section 591.050 is not mentioned.

  Collins v. Leahy, supra, the defendant objected to the cross-examination of his chauffeur about a conviction occurring 19 years before trial. The decision held that the statute permitted inquiry as to prior convictions "unless too remote to have any effect on his credibility" but defendant's objection lacked specificity. No authority is cited by the court for the proposition that the statute accords trial judges with discretion to declare a conviction too remote to bear on credibility. The authorities cited, including Page v. Payne, all deal with the discretion of the trial court in controlling inquiry on cross-examination as to conduct of a criminal nature rather than *convictions*. Some cases cited predate § 491.-050.

  Fisher v. Gunn, supra, also mentions the remoteness exception citing Page, Collins and Dalton, but this language was declared to be dictum in State v. Morris, 460 S.W.2d at 628.

  Willis v. Wabash Railroad Company, supra, reiterates the dictum in Fisher v. Gunn as to remoteness.

5. Evidence of a juvenile court record may not now be used for impeachment purposes. State v. Williams, 473 S.W.2d 388 (Mo.1971).

ment,[6] and said at p. 503: "We do not agree with these decisions. It is our view, as stated in Morris [State v. Morris, supra], that the statute confers an absolute right to show convictions solely to affect credibility. It may be that the right should be restricted in some respects, but, if any change is to be made we think it must be done by the General Assembly."

Although the *absolute right* terminology was not used in Smile v. Lawson, 506 S. W.2d 400 (Mo.1974), the same result was reached by the court. One of the plaintiffs [wife] had been asked by interrogatory if she had ever been convicted of any criminal offense, either felony or misdemeanor. She answered in the affirmative and listed six vagrancy convictions in various cities in three states in 1950 and 1951. Over objection of her attorney that the convictions were merely city ordinance violations, defendant was permitted to cross-examine her concerning the criminal convictions. The court held the cross-examination proper under § 491.050, and, after noting there was no evidence to substantiate the assertion that the convictions were merely city ordinance violations said at 402: "Mrs. Smile having admitted in writing under oath that these convictions were criminal offenses . . . and plaintiffs not having substantiated counsel's statement that they were 'at most city ordinance violations' may not now on·'this appeal dispute the admitted facts."

■ We are convinced by the foregoing decisions interpreting § 491.050 that any

speculation which has heretofore existed as to the existence of trial court discretion to bar impeachment of a witness by prior convictions, felony or misdemeanor, for remoteness or other grounds, has been firmly laid to rest. Further, where the witness in reply to an interrogatory inquiring about any convictions of a *crime* answers under oath that he was convicted of speeding and convicted of passing in a no passing zone, the convictions may be proved to affect his credibility either by the records of such convictions or by his own cross-examination, as spelled out in § 491.050. The statute gave plaintiff an option as to the manner of impeachment of Adams [Moe v. Blue Springs Truck Lines, Inc., 426 S.W. 2d 1 (Mo.1968)] and this included the *absolute right* to cross-examination about the convictions.

■■ We would also observe that without any evidence by defendant the onus of demonstrating the convictions were not municipal court violations was cast on the plaintiff, rather than the defendant as held in State v. Meyer, 473 S.W.2d 374 (Mo. 1971), and Smile v. Lawson, supra. In this appeal defendant would likewise place such burden with the plaintiff. This is not the law and defendant's contention is without merit. The suppression of plaintiff's cross-examination of Adams as to his admitted convictions for crime is contrary to the *absolute right* afforded plaintiff by § 491.050.[7]

■ In this appeal the defendant seeks to challenge the constitutionality of the Su-

---

6. Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), cert. den., 382 U.S. 987, and Gordon v. United States, 127 U.S. App.D.C. 343, 383 F.2d 936 (1967) [Burger, J.], cert. den., 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 were among the cases cited. These two cases hold that prior convictions for impeachment purposes are subject to the trial court's discretion and factors to be considered are dishonest conduct, remoteness, and whether the prior conviction is for substantially the same conduct as that for which the *defendant* is on trial. In discussing the moral turpitude requirement one treatise states: "Thus does the serpent of uncertainty crawl into the Eden of trial administration" Mc-

Cormick, Evidence, 2d ed. § 43 (1972). Also see: Comment, Credibility Impeachment By Prior Conviction, 36 Mo.L.Rev. 472–497 (1971).

7. The standard for inquiry into specific criminal offenses is not absolute proof, but rather good faith belief on the part of the attorney conducting the cross-examination. State v. McBride, 231 S.W. 592 (Mo.1921). State v. Heusack, 189 Mo. 295, 88 S.W. 21 (Mo. 1905). In addition to Adams' answer to interrogatory, plaintiff offered to prove that Adams admitted in his deposition that one of the Oklahoma convictions occurred in state court.

preme Court's interpretation of § 491.050 by contending that to mandatorily permit evidence of traffic convictions having no fair relationship to witness credibility would render the statute unconstitutional and violative of the Due Process clauses of the Federal and Missouri Constitutions. The defendant "appreciates the previous holdings by the Missouri Supreme Court that [§ 491.050] makes the admission of any and all convictions of State statutes admissible on cross-examination," but belatedly urges that the trial court discretion to exclude convictions be recognized and adopted to avoid the hypothesized clash with the Due Process clauses. Thus, defendant again advocates and seeks adoption of the discretionary, or as described in State v. Busby, supra, the "minority" rule.

Since Art. V, § 3 of the Missouri Constitution, V.A.M.S. vests in the Supreme Court the exclusive jurisdiction in cases involving the *construction* of these Constitutions, as opposed to the mere *application,* we momentarily pause to consider our jurisdiction, whether challenged by the parties or not. Kelch v. Kelch, 450 S.W.2d 202 (Mo.1970), transferred 462 S.W.2d 161 (Mo.App.1970). But the mere assertion that a constitutional question is involved does not of itself raise such a question within the meaning of Art. 5, § 3. Cohen v. Ennis, 308 S.W.2d 669 (Mo.1958), transferred 314 S.W.2d 239 (Mo.App.1958), re-transferred 318 S.W.2d 310 (Mo. banc 1958). In order to deprive this court of appellate jurisdiction the constitutional question must be real and substantial and not merely colorable. Willey v. Talkington, 312 S.W.2d 77 (Mo.1958); Junkins v. Local Union No. 6313, etc., 263 S.W.2d 337 (Mo.1954), transferred, 241 Mo.App. 1029, 271 S.W.2d 71 (1954); Young v. Brassfield, 223 S.W.2d 491 (Mo.1949), transferred 241 Mo.App. 35, 228 S.W.2d 823 (1950).

As previously noted, § 491.050 is an enabling statute which removed the old common-law rule of incompetency of one convicted of infamous crimes [treason, other felonies and misdemeanors involving dishonesty or the obstruction of justice]. The language of the statute was construed by State v. Blitz to include more than what had been considered infamous crimes and that it was the intent of the Legislature to apply to all felonies and misdemeanors, both as to parties to a suit and witnesses in criminal and civil cases.

We view the purported constitutional issue as specious, being merely another attempt to have this court interpret the statute so that the discretionary rule, rather than the absolute right construction, be adopted in this state. This proposal has always met with rejection by the Supreme Court and we are bound to follow the decisions of that court. State v. Holley, 488 S.W.2d 925 (Mo.App.1972).

We would also add the following observations. To preserve for appellate review a constitutional question, the question must be raised at the first opportunity. Kelch v. Kelch, supra; Ragan v. Ragan, 315 S.W.2d 142 (Mo.App.1958). Defendant's motion did not question the constitutionality of the statute and an unconditional challenge is required since a contention that a statute would do violence to a constitutional proviso only if construed in a certain way does not raise a constitutional issue. Community Fire Protection Dist. v. Board of Education, 312 S.W.2d 75 (Mo.1958), transferred, 311 S.W.2d 873 (Mo.App.1958); State ex rel. Volker v. Kirby, 345 Mo. 801, 136 S.W.2d 319 (1940). Further, defendant lacks standing to raise the issue since no constitutional right has been denied him and no constitutional question ruled against him. Community Fire Protection Dist. v. Board of Educ., supra. Instead, defendant argues that Due Process requirements of a fair trial have been construed to mean that a rule of evidence must have rational connection to the issues to be decided and therefore the trial judge must have discretion to exclude evidence which has no such connection but will

merely serve to prejudice a litigant's case. Assuming defendant's premise, it does not follow that the Legislature could not conclude that conviction of a crime (1) should not render a person incompetent as a witness but, (2) nevertheless, such conviction evidences some disregard for the legal system which bears on the witness' credibility regardless of the conviction. And, an instruction limiting the effect of the conviction is available, thus mitigating against the possibility of prejudice. Defendant's point is denied.

The judgment is reversed and this case remanded for a new trial.

HOGAN, C. J., and STONE and TITUS, JJ., concur.